**GREENBERG TRAURIG, LLP**
Louis Smith, Esq.
Alan Brody, Esq.
Rebecca Zisek, Esq.
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone:    (973) 360-7900
Facsimile:    (973) 301-8410
Email: SmithLo@gtlaw.com
    BrodyA@gtlaw.com
    Rebecca.Zisek@gtlaw.com
*Attorneys for Defendants HSBC Equity Partners*
*USA, L.P. and HSBC Private Equity Partners II USA LP*

**UNITED STATES BANKRUPTCY DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>TOPS HOLDING II CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 18-22279 (SHL)<br>(Jointly Administered) |
| ALAN D. HALPERIN, AS THE LITIGATION TRUSTEE FOR THE TOPS HOLDING LITIGATION TRUST,<br><br>Plaintiff,<br>-against-<br><br>MORGAN STANLEY INVESTMENT MANAGEMENT INC., *et al.*<br><br>Defendants. | Adv. Pro. No. 20-08950 (DSJ) |

**DEFENDANTS HSBC EQUITY PARTNERS USA, L.P.**
**AND HSBC PRIVATE EQUITY PARTNERS II USA LP'S**
<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

    I.    The HSBC Defendants Were Minority Shareholders of Tops with No Voting or
Decision Making Power ........................................................................................................ 3

    II.    The HSBC Defendants Received their Dividend Payments from Tops into their
Respective HBUS Accounts .................................................................................................. 4

STANDARD OR REVIEW ........................................................................................................... 5

ARGUMENT .................................................................................................................................. 5

    I.    THE FRAUDULENT TRANSFER CLAIMS BASED ON THE 2009, 2012, AND
2013 DIVIDENDS (COUNTS I, III, IV, V, VII, AND VIII) ARE EXCEPTED
FROM AVOIDANCE UNDER § 546(E) OF THE BANKRUPTCY CODE ............ 5

        A.  The HSBC Defendants Were Customers of HSBC Bank USA, N.A. ................... 6
        B.  HBUS Acted as the HSBC Defendants' Agent in Connection with a Securities
Contract .................................................................................................................. 6

    II.    THE HSBC DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON THE CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS (COUNT
I-IV) ............................................................................................................................ 8

    III.    THE HSBC DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON THE ACTUAL FRAUDULENT TRANSFER CLAIMS (COUNTS V-VIII) .... 8

        A.  The Trustee Must Establish Fraudulent Intent of the Transferees ........................ 9
        B.  The Trustee Cannot Prove the HSBC Defendants Acted with Fraudulent Intent
in their Receipt of Dividend Payments ................................................................ 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bankr. Est. of Norske Skogindustrier ASA*,
   629 B.R. 717 (Bankr. S.D.N.Y. 2021) ..................................................................................6

*Colvin v. Keen*,
   900 F.3d 63 (2d Cir. 2018) ....................................................................................................9

*Datiz v. Int'l Recovery Assocs.*,
   2017 U.S. Dist. LEXIS 2477 (E.D.N.Y. Jan. 4, 2017) ..........................................................9

*Essex Global Trading, Inc. v. Perla*,
   2022 N.Y. Misc. LEXIS 5525 (N.Y. Sup. Ct. Sept. 29, 2022) ............................................10

*Geltzer v. Brizinova (In re Brizinova)*,
   592 B.R. 442 (Bankr. E.D.N.Y. 2018) ..................................................................................9

*Halperin v. Morgan Stanley Inv. Mgmt. Inc. (In re Tops Holding II Corp.)*,
   2023 U.S. Dist. LEXIS 2749 (S.D.N.Y. Jan. 6, 2023) ........................................................10

*Halperin v. Morgan Stanley Investment Mgmt. (In re Tops Holding II Corp.)*,
   646 B.R. 617 (Bankr. S.D.N.Y. 2022) ...........................................................................9, 10

*Loreley Fin. (Jersey) No. 4 Ltd. v. UBS Ltd.*,
   963 N.Y.S. 2d 566 (N.Y. Sup. Ct. 2013) ............................................................................11

*In re Manhattan Inv. Fund Ltd.*,
   310 B.R. 500 (Bankr. S.D.N.Y. 2002) ................................................................................10

*In re Nine West LBO Sec. Litig.*,
   87 F.4th 130 (2d Cir. 2023) ..................................................................................................5

*Picard v. Taylor (In re Park S. Sec., LLC)*,
   326 B.R. 505 (S.D.N.Y. 2005) ..............................................................................................9

*RDLF Fin. Servs., LLC v. Esquire Capital Corp.*,
   2012 N.Y. Misc. LEXIS 914 (N.Y. Sup. Ct. Feb. 27, 2012) ..............................................11

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005) ..................................................................................................10

*Tese-Milner v. Bon Seung Kim (In re Level 8 Apparel, LLC)*,
   2021 Bankr. LEXIS 183 (Bankr. S.D.N.Y. Jan. 26, 2021) ............................................10, 12

*In re Thelen LLP*,
   736 F.3d 213 (2d Cir. 2013) ................................................................................................11

*In re Tribune Co. v. Fraudulent Conveyance Litig.*,
   946 F.3d 66 (2d Cir. 2019) ....................................................................................................5

**Statutes**

11 U.S.C. § 101(22)(A) ................................................................................................................5

11 U.S.C. § 544(b) ........................................................................................................................1

11 U.S.C. § 546(e) ...............................................................................................................2, 5, 6, 8

11 U.S.C. § 550(a)(1) ....................................................................................................................1

New York Debtor and Creditor Law §§ 273-275 .........................................................................1

NYDCL § 276 ..................................................................................................................1, 9, 10, 11

**Other Authorities**

https://www.occ.gov/topics/charters-and-licensing/financial-institution-
  lists/national-by-name.pdf (identifying HBUS on list of "National Banks
  Active As of 11/30/2024") (last visited 12/20/24) ...................................................................6

30 N.Y. Jur. Creditors' Rights and Remedies § 354 (2020) .........................................................11

iii

Defendants HSBC Equity Partners USA, L.P. ("HSBC I") and HSBC Private Equity Partners II USA LP ("HSBC II" and, together with HSBC I, "HSBC" or "HSBC Defendants") respectfully submit this memorandum of law in support of their Motion for Summary Judgment. As set forth herein, the HSBC Defendants join in and adopt the papers submitted today by the Morgan Stanley Defendants[1] in support of their motion for summary judgment to the extent they address the claims asserted against the HSBC Defendants.

## PRELIMINARY STATEMENT

The HSBC Defendants join in and adopt the "Preliminary Statement" contained in the memorandum of law submitted today by the Morgan Stanley Defendants in support of their motion for summary judgment ("MS Brief") and otherwise state the following.

Between 2007 and 2013, the HSBC Defendants were minority shareholders of Tops,[2] alongside Cap V and other private equity investors (collectively, "PE Investors"). Together, the HSBC Defendants held a 19.9% interest in the Company. Throughout the PE Investors' nearly six-year investment in Tops, Tops issued four dividends to its shareholders ("Dividends"). Through this action, the Trustee (in addition to other claims not pertinent to the HSBC Defendants) seeks to avoid all four Dividends as constructive fraudulent transfers, pursuant to 11 U.S.C. §§ 544(b) and 550(a)(1) and New York Debtor and Creditor Law ("NYDCL") §§ 273-275 (Counts I-IV) ("Constructive Fraudulent Transfer Claims"); and as actual fraudulent transfers, pursuant to 11 U.S.C. §§ 544(b) and 550(a)(1) and NYDCL § 276 (Counts V-VIII) ("Actual Fraudulent

---

[1] "Morgan Stanley Defendants" refers to Morgan Stanley Investment Management, Inc., Morgan Stanley Capital Partners V U.S. Holdco LLC ("Cap V"), Gary Matthews, Eric Kanter, and Eric Fry.

[2] Unless otherwise indicated, "Tops" or the "Company" refer to Tops Holding II Corporation or, where appropriate, Tops Holding Corporation or subsidiaries of Tops Holding II Corporation or Tops Holding Corporation.

1

Transfer Claims"). The HSBC Defendants are entitled to summary judgment on all the claims asserted against them.

The 2009, 2012, and 2013 Dividends (collectively, "Safe Harbor Dividends") are barred by Bankruptcy Code § 546(e)'s safe harbor, which prevents a trustee from avoiding transfers made by or to a "financial institution" "in connection with" a "securities contract." The undisputed evidence adduced in discovery establishes that Tops issued those Dividends "in connection with" notes purchase agreements, which indisputably constitute "securities contracts" under § 546(e). The proceeds of the notes sold through those securities contracts were used (at least in part) to fund the Safe Harbor Dividends, including the Dividend payments made to the HSBC Defendants. As explained in the MS Brief, the undisputed evidence demonstrates that Tops qualifies as a "financial institution." The undisputed evidence further demonstrates that the HSBC Defendants qualify as "financial institutions" under § 546(e), as they were customers of HSBC Bank USA, N.A. ("HBUS"), a nationally chartered bank; they received the Safe Harbor Dividend payments into their respective HBUS accounts; and HBUS acted as the HSBC Defendants' agent when it received and subsequently handled the Safe Harbor Dividend payments on the HSBC Defendants' behalf, pursuant to agreements that expressly created an agency relationship between them. For these reasons and the additional reasons set forth in the MS Brief, summary judgment should be granted in the HSBC Defendants' favor on Counts I, III, IV, V, VII, and VIII.

As explained in the MS Brief, the Trustee's Constructive Fraudulent Transfer Claims fail for the additional reason that the Trustee cannot satisfy his burden to prove that Tops was insolvent at the time of, or as a result of, the Dividends; that any of the Dividends left Tops with unreasonably small capital; or that Tops issued the Dividends with the intent or belief that the Dividends would

2

leave Tops unable to pay its debts. Accordingly, the HSBC Defendants are entitled to summary judgment on Counts I-IV for this separate and independent reason.

Finally, as explained in the MS Brief, the Trustee's Actual Fraudulent Transfer Claims fail for the additional reason that the Trustee cannot prove by clear and convincing evidence that Tops engaged in the Dividends with an actual intent to hider, delay, or defraud creditors. And, even if the Trustee could satisfy this burden (which he cannot), these claims nonetheless fail as against the HSBC Defendants, because the Trustee cannot prove by clear and convincing evidence that the HSBC Defendants, as "transferees" of the Dividends, acted with any fraudulent intent whatsoever. Indeed, the undisputed facts demonstrate that the HSBC Defendants, as minority shareholders with only "board observation rights," had no voting or decision-making power and otherwise had a passive role in relation to Tops. In addition, for the last two years of the investment, the HSBC Defendants' investment in Tops was managed by an independent investment firm. As the Trustee cannot prove that the HSBC Defendants acted with fraudulent intent, the HSBC Defendants are entitled to summary judgment on Counts V-VIII.

## FACTUAL BACKGROUND

The HSBC Defendants join in and adopt the recitation of the pertinent facts set forth in the "Background" section of the MS Brief, and otherwise state the following.

### I. The HSBC Defendants Were Minority Shareholders of Tops with No Voting or Decision-Making Power

In December 2007, the HSBC Defendants collectively acquired a 19.9% minority interest in Tops. *See* SUMF[3] ¶ 1. Pursuant to the governing Shareholders' Agreement, HSBC obtained board observation rights, which permitted one HSBC representative to attend certain meetings of

---

[3] "SUMF" refers to the HSBC Defendants' simultaneously submitted Statement of Undisputed Material Facts.

3

the Tops Board of Directors "as an observer" and to obtain copies of certain written materials provided to the Directors. *Id.* ¶ 2. HSBC did not have any voting or decision-making power as a result of its board observation rights or otherwise and, as a minority shareholder, had a passive role in relation to Tops. *Id.* ¶ 3.

From the initial investment in December 2007 through November 2011, the HSBC Defendants were managed by employees of HSBC Capital (USA), Inc. ("HSBC Capital"). *Id.* ¶ 4. During that time period, a HSBC Capital employee (typically Andrew Trigg) served in the HSBC Defendants' "board observer" role. *Id.* In November 2011, the management team of HSBC Capital left HSBC and established Graycliff Partners LP ("Graycliff"), an independent investment firm. *Id.* ¶ 5. The personnel of HSBC Capital involved with the Tops investment, including Andrew Trigg, moved to Graycliff at that time. *Id.* Graycliff thereafter managed the HSBC Defendants' investment in Tops, which included serving in the HSBC Defendants' "board observer" role. *Id.*

## II.    The HSBC Defendants Received their Dividend Payments from Tops into their Respective HBUS Accounts

Throughout the HSBC Defendants' ownership of an interest in Tops, the HSBC Defendants maintained bank accounts with HBUS, a nationally chartered bank (together, "HSBC Accounts"). *Id.* ¶¶ 6, 7, 15; Declaration of Irfan Khan, dated December 19, 2024 ("Khan Declaration" or "Khan Decl.") ¶¶ 2-4. The HSBC Accounts were governed by Investment Services Agreements ("ISAs"), pursuant to which HBUS was designated to act as the HSBC Defendants' agent in connection with the funds deposited into the HSBC Accounts. SUMF ¶¶ 7, 8, 15, 16; Khan Decl. ¶¶ 3-4, Exs. A, B. Specifically, HBUS was "authorized as an agent to invest on behalf of [the HSBC Defendants] on an overnight/next business day basis any Excess Balance in" the HSBC Accounts. SUMF ¶¶ 8, 16; Khan Decl. ¶ 5, Exs. A, B. The HSBC Defendants received their 2009, 2012, and 2013

4

Dividend payments into their respective HSBC Accounts. SUMF ¶¶ 9, 11, 13, 17, 19, 21; Khan Decl. ¶¶ 6, 7, 9, 10, 12, 13, Exs. C-H. At the end of each business day on which the HSBC Defendants received these Dividend payments, HBUS executed a sweep transfer of the funds in the HSBC Accounts, including funds from the Dividend payments, as it was "authorized as an agent" to do under the ISAs. *See* SUMF ¶¶ 10, 12, 14, 18, 20, 22; Khan Decl. ¶¶ 8, 11, 14, Exs. C-H.

## STANDARD OF REVIEW

The HSBC Defendants join in and adopt the "Standard of Review" section of the MS Brief.

## ARGUMENT

**I. THE FRAUDULENT TRANSFER CLAIMS BASED ON THE 2009, 2012, AND 2013 DIVIDENDS (COUNTS I, III, IV, V, VII, AND VIII) ARE EXCEPTED FROM AVOIDANCE UNDER § 546(e) OF THE BANKRUPTCY CODE**

As set forth in Argument Section I of the MS Brief, which HSBC joins in and adopts, the Trustee's Actual and Constructive Fraudulent Transfer Claims based on the Safe Harbor Dividends are barred by Bankruptcy Code § 546(e)'s safe harbor. In addition to the points set forth in this section of the MS Brief, including that Tops was a "financial institution," the undisputed facts further establish that the HSBC Defendants qualify as "financial institutions" under § 546(e).

"Section 546(e) of Chapter II of the Bankruptcy Code precludes avoidance of 'a transfer made by or to (or for the benefit of) a … financial institution … in connection with a securities contract ….'" *In re Nine West LBO Sec. Litig.*, 87 F.4th 130, 143 (2d Cir. 2023) (quoting 11 U.S.C. § 546(e)) (alterations in original). "The Code defines 'financial institution' to include not only banks, but also a customer of a bank 'when [the bank] is acting as agent or custodian for a customer … in connection with a securities contract." *Id.* (quoting 11 U.S.C. § 101(22)(A)) (alterations in original). As the Second Circuit has held, an entity qualifies as a "financial institution" under § 546(e) if it is the customer of a nationally chartered bank that was acting as

5

the entity's agent for the purpose of the transfer at issue. *See In re Tribune Co. v. Fraudulent Conveyance Litig.*, 946 F.3d 66, 77-80 (2d Cir. 2019); *see also In re Bankr. Est. of Norske Skogindustrier ASA*, 629 B.R. 717, 757–59 (Bankr. S.D.N.Y. 2021) ("*Merit* left open the question whether the safe harbor would apply where, for example, [a transferor or transferee] is a [financial institution] by virtue of being a customer of a financial institution" but "[a]fter *Merit*, the Second Circuit in *Tribune* found that the safe harbor does apply in such situations"). The HSBC Defendants satisfy this standard.

### A. The HSBC Defendants Were Customers of HSBC Bank USA, N.A.

The undisputed evidence establishes that the HSBC Defendants maintained bank accounts with HBUS, a nationally chartered bank, and that the HSBC Defendants received the Safe Harbor Dividends into their respective HBUS accounts. *See* SUMF ¶¶ 6-7, 9, 11, 13, 15, 17, 19, 21; Khan Decl. ¶¶ 2-4, 6-7, 9-10, 12-13, Exs. A-H; *see also* https://www.occ.gov/topics/charters-and-licensing/financial-institution-lists/national-by-name.pdf (identifying HBUS on list of "National Banks Active As of 11/30/2024") (last visited 12/20/24). The HSBC Defendants were thus "customers" of HBUS within the meaning of § 546(e). *See* MS Brief at Argument Section I.D.1.

### B. HBUS Acted as the HSBC Defendants' Agent in Connection with a Securities Contract

The evidence indisputably demonstrates that HBUS acted as the HSBC Defendants' agent in connection with a securities contract when it received the HSBC Defendants' Safe Harbor Dividend payments into their respective HBUS accounts and subsequently handled those funds on the HSBC Defendants' behalf, in accordance with the agreements governing the accounts.

It is undisputed that HSBC I and HSBC II each had bank accounts with HBUS (together, "HSBC Accounts") that were governed by ISAs. *See* SUMF ¶¶ 7, 15; Khan Decl. ¶¶ 3-4, Exs. A, B. Pursuant to the ISAs, HBUS was designated to act as the HSBC Defendants' agent in

6

connection with the funds deposited into the HSBC Accounts.  *See* SUMF ¶¶ 8, 16; Khan Decl. ¶ 5, Exs. A, B.  Specifically, HBUS was "authorized as agent to invest on behalf of [the HSBC Defendants] on an overnight/next business day basis any Excess Balance in" the HSBC Accounts.  *See* SUMF ¶¶ 8, 16; Khan Decl., Exs. A, B.  Accordingly, at the end of each business day, HBUS would sweep the funds in the HSBC Accounts into another interest-bearing account where the funds could earn interest overnight.  *See* Khan Decl. ¶ 5.  The ISAs each state repeatedly that HBUS was acting as the HSBC Defendants' "agent" in connection with the funds deposited into the HSBC Accounts.  *See* Khan Decl., Exs. A, B.

It is also undisputed that the HSBC Defendants' respective Safe Harbor Dividend payments were deposited into the HSBC Accounts (*see* SUMF ¶¶ 9, 11, 13, 17, 19, 21; Khan Decl. ¶¶ 6-7, 9-10, 12-13, Exs. C-H) and that, in its role as "agent," HBUS received and handled those payments in accordance with the terms of the ISAs.  Indeed, at the end of each business day on which the HSBC Defendants received the Safe Harbor Dividend payments, HBUS executed a sweep transfer of the funds in the HSBC Accounts, including funds from the Dividend payments, as it was "authorized as an agent" to do under the ISAs.  *See* SUMF ¶¶ 10, 12, 14, 18, 20, 22; Khan Decl. ¶¶ 8, 11, 14, Exs. C-H.  Accordingly, there can be no dispute that HBUS, a nationally chartered bank of which the HSBC Defendants were "customers," acted as the HSBC Defendants' agent when it received their respective Safe Harbor Dividend payments into the HSBC Accounts and subsequently handled those funds.

Finally, it cannot be disputed that HBUS acted as the HSBC Defendants' agent "in connection with a securities contract."  As set forth in the MS Brief, Tops, in connection with each of the Safe Harbor Dividends, sold notes pursuant to notes purchase agreements ("NPAs") and the proceeds of those notes were used (at least in part) to fund the Safe Harbor Dividend payments

7

that were made to the HSBC Defendants and other shareholders of Tops.  *See* MS Brief at Argument Section I.B.   As the NPAs constitute "securities contracts" under § 546(e), *id.*, it is indisputable that HBUS acted as the HSBC Defendants' agent in connection with those securities contracts when it received and handled the HSBC Defendants' Safe Harbor Dividend payments (which were the proceeds of the notes sold through those securities contracts) on the HSBC Defendants' behalf.

In light of the foregoing, the Court should rule that the HSBC Defendants are "financial institutions" under § 546(e); and, for the reasons set forth herein and in Argument Section I of the MS Brief, rule that the Safe Harbor Dividends are excepted from avoidance under § 546(e).   The Court should grant the HSBC Defendants summary judgment on these claims (Counts I, III, IV, V, VII, and VIII) and dismiss them with prejudice.

**II.    THE HSBC DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS (COUNTS I-IV)**

For the reasons set forth in Argument Section II of the MS Brief, which HSBC joins in and adopts, the Trustee's Constructive Fraudulent Transfer Claims also fail as a matter of law, because the Trustee cannot satisfy his burden to prove that Tops was insolvent at the time of, or as a result of, the Dividends; that any of the Dividends left Tops with unreasonably small capital; or that Tops issued the Dividends with the intent or belief that the Dividends would leave Tops unable to pay its debts.  The HSBC Defendants are therefore entitled to summary judgment on these claims.

**III.    THE HSBC DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ACTUAL FRAUDULENT TRANSFER CLAIMS (COUNTS V-VIII)**

For the reasons set forth in Argument Section III of the MS Brief, which HSBC joins in and adopts, the Trustee cannot prove by clear and convincing evidence that Tops engaged in the Dividends with an actual intent to hider, delay, or defraud creditors.  The HSBC Defendants are entitled to summary judgment on the Trustee's Actual Fraudulent Transfer Claims on this basis

8

alone. In addition, even if the Trustee could prove that Tops acted with actual fraudulent intent (which he cannot), these claims would nonetheless fail as against the HSBC Defendants, because the Trustee cannot prove by clear and convincing evidence (and does not even allege) that the HSBC Defendants, as "transferees" of the Dividends, acted with any fraudulent intent whatsoever. The Court should therefore grant the HSBC Defendants summary judgment on the Trustee's Actual Fraudulent Transfer Claims.

### A. The Trustee Must Establish Fraudulent Intent of the Transferees

At the motion-to-dismiss stage, HSBC argued that the Trustee's Actual Fraudulent Transfer Claims against the HSBC Defendants should be dismissed for failure to allege their fraudulent intent. *See* ECF No. 33 at 5-6 (citing cases). Judge Drain rejected this argument, disavowing his earlier decision in *Picard v. Taylor (In re Park S. Sec., LLC)*—which held that a trustee must "establish both the debtor's and the transferee's actual fraudulent intent" under NYDCL § 276, *see* 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005)—and ruling that the Trustee need only allege actual fraudulent intent on the part of the transferor. *See Halperin v. Morgan Stanley Investment Mgmt. (In re Tops Holding II Corp.)*, 646 B.R. 617, 673-74 (Bankr. S.D.N.Y. 2022).

However, Judge Drain's decision on this issue at the motion-to-dismiss stage is not binding and does not prevent the Court from reconsidering this issue. Indeed, "courts have declined to apply the [law of the case] doctrine when the prior order denied a motion to dismiss," as "'the deni[al of a] motion to dismiss … by definition is not a final order.'" *Geltzer v. Brizinova (In re Brizinova)*, 592 B.R. 442, 455 (Bankr. E.D.N.Y. 2018) (quoting *Datiz v. Int'l Recovery Assocs.*, 2017 U.S. Dist. LEXIS 2477, at *5 (E.D.N.Y. Jan. 4, 2017)) (alterations in original). In addition, and in any event, as the Second Circuit has recognized, "[the doctrine of law of the case] is not a rule that bars courts from reconsidering prior rulings, but is rather 'a discretionary rule of practice [that] generally does not limit a court's power to reconsider an issue.'" *Geltzer*, 592 B.R. at 455

9

(quoting *Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018)) (alterations in original). When a court "'faces the question whether to depart from its own prior ruling, the court has wide discretion to make whichever decision it thinks preferable.'" *In re Brizinova*, 592 B.R. at 455 (quoting *Keen*, 900 F.3d at 73). Accordingly, this Court can and should reconsider Judge Drain's prior ruling on this issue.

This is an unsettled area of the law, as there is a "split of authority" as to whether the transferee's fraudulent intent must be alleged under NYDCL § 276. *See, e.g.*, *Essex Global Trading, Inc. v. Perla*, 2022 N.Y. Misc. LEXIS 5525, at **8-9 (N.Y. Sup. Ct. Sept. 29, 2022).[4] Even Judge Drain recognized that there is a "difference of opinion in the case law about this issue," *see In re Tops Holding II Corp.*, 646 B.R. at 673, and the District Court declined to weigh in on this issue in the context of the HSBC Defendants' motion for leave to appeal, because it could not "quickly and cleanly" decide the issue "without having to study the record." *See Halperin v. Morgan Stanley Inv. Mgmt. Inc. (In re Tops Holding II Corp.)*, 2023 U.S. Dist. LEXIS 2749, at **11-12 (S.D.N.Y. Jan. 6, 2023).

Although there are cases that support the prior ruling in this case (*see, e.g.*, *In re Tops Holding II Corp.*, 646 B.R. at 673-74) (citing cases)), there are also contrary decisions holding that mutual fraudulent intent is required under NYDCL § 276. *See, e.g.*, *Tese-Milner v. Bon Seung Kim (In re Level 8 Apparel, LLC)*, 2021 Bankr. LEXIS 183, at **26-27 (Bankr. S.D.N.Y. Jan. 26, 2021) ("New York law requires fraudulent intent of both the transferor and the transferee."); *In re*

---

[4] Judge Drain noted that the "Second Circuit has apparently recognized that NYDCL § 276 requires *only* that the transferor's intent be alleged." *In re Tops Holding II Corp.*, 646 B.R. at 674 (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)) (emphasis added). This is an overstatement of the holding, however, as the court did not consider whether mutual fraudulent intent is required and instead opined only that the fraud alleged in that case was unconnected to the transfers sought to be avoided and, thus, that the claims under NYDCL § 276 were rightfully dismissed. *Id.*

10

*Manhattan Inv. Fund Ltd.*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002) (holding that under NYDCL § 276, a cause of action must allege fraudulent intent on the part of the transferor as well as the transferee); *see also Loreley Fin. (Jersey) No. 4 Ltd. v. UBS Ltd.*, 963 N.Y.S. 2d 566, 577 (N.Y. Sup. Ct. 2013) (examining intent of the transferee parties); *RDLF Fin. Servs., LLC v. Esquire Capital Corp.*, 2012 N.Y. Misc. LEXIS 914, at 29 (N.Y. Sup. Ct. Feb. 27, 2012) (dismissing NYDCL § 276 claim for failure to allege transferee's intent); *cf.* 30 N.Y. Jur. Creditors' Rights and Remedies § 354 (2020) ("Mutual fraudulent intent … is required … to invoke the protection of the law prohibiting fraudulent conveyances…."). "Where, as here, a state's highest court has not spoken on an issue, [the Court should] give 'proper regard' to the relevant rulings of a state's lower courts." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

In light of the foregoing authority, the Court should reconsider this issue and hold that the Trustee is required to establish <u>both</u> the transferor's (Tops) and the transferees' (the HSBC Defendants) fraudulent intent in order to prevail on his Actual Fraudulent Transfer Claims against the HSBC Defendants.

### B.    The Trustee Cannot Prove the HSBC Defendants Acted with Fraudulent Intent in their Receipt of Dividend Payments

Based on the undisputed material facts established in discovery, the Trustee cannot prove that the HSBC Defendants engaged in any of the Dividend transactions with an actual intent to hider, delay, or defraud creditors (let alone by clear and convincing evidence).

It is undisputed that the HSBC Defendants were minority shareholders of Tops who collectively held a 19.9% interest in the Company. *See* SUMF ¶ 1. Although the HSBC Defendants had board observation rights under the governing Shareholders' Agreement, which permitted one HSBC representative to attend certain meetings of the Tops Board of Directors "as an observer" and to obtain copies of certain written materials provided to the Directors, *id.* ¶ 2, it

11

cannot be disputed that this "board observer" role allowed HSBC to do only that—observe. HSBC did not have any voting or decision-making power as a result of its board observation rights or otherwise and, as a minority shareholder, had a passive role in relation to Tops. *Id.* ¶ 3. Additionally, it is undisputed that, in November 2011, the management team of HSBC Capital, including those who had been managing the HSBC Defendants' investment in Tops, left HSBC and established Graycliff Partners LP ("Graycliff"), an independent investment firm. *Id.* ¶¶ 4-5. Graycliff thereafter managed the HSBC Defendants' investment in Tops, which included serving in the HSBC Defendants' "board observer" role. *Id.* ¶ 5. This occurrence makes the HSBC Defendants' connection to Tops even more remote. In light of these undisputed facts, there is no basis whatsoever for a finding that the HSBC Defendants acted with fraudulent intent in connection with the Dividend payments, and no evidence has been adduced through discovery that would enable the Trustee to satisfy his burden on these claims.

The Trustee's failure and inability to allege, let alone prove by clear and convincing evidence, that the HSBC Defendants acted with fraudulent intent in their receipt of Dividend payments is fatal to his Actual Fraudulent Transfer Claims. *See, e.g.*, *In re Level 8 Apparel, LLC*, 2021 Bankr. LEXIS 183, at *34 (dismissing actual fraudulent transfer claim where trustee failed to sufficiently allege that transferee acted with actual fraudulent intent to defraud creditors). Accordingly, the Court should grant summary judgment in the HSBC Defendants' favor and dismiss the Trustee's Actual Fraudulent Transfer Claims with prejudice.

## CONCLUSION

For all these reasons and the reasons set forth in the MS Brief that have been incorporated herein, the Court should grant summary judgment in HSBC's favor and dismiss all claims against HSBC with prejudice.

12

Dated: December 20, 2024	**GREENBERG TRAURIG, LLP**

By: _/s/ Louis Smith_
Louis Smith, Esq.
Alan Brody, Esq.
Rebecca Zisek, Esq.
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone:	(973) 360-7900
Facsimile:	(973) 301-8410
Email: SmithLo@gtlaw.com
	BrodyA@gtlaw.com
	Rebecca.Zisek@gtlaw.com

*Attorneys for Defendants HSBC Equity Partners USA, L.P. and HSBC Private Equity Partners II USA LP*

13