**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

| | | |
|---|---|---|
| IN RE | : | Chapter 11 |
| | : | |
| TOPS HOLDING II CORPORATION, *et al.*, | : | Case No. 18-22279 (SHL) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------- X

| | | |
|---|---|---|
| ALAN D. HALPERIN, AS THE LITIGATION TRUSTEE FOR THE TOPS HOLDING LITIGATION TRUST, | : | Adv. Pro. No. 20-08950 (DSJ) |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| -against- | : | |
| | : | |
| MORGAN STANLEY INVESTMENT MANAGEMENT INC.; MORGAN STANLEY CAPITAL PARTNERS V U.S. HOLDCO LLC a/k/a NORTH HAVEN CAPITAL PARTNERS V U.S. HOLDCO LLC; HSBC EQUITY PARTNERS USA, L.P.; HSBC PRIVATE EQUITY PARTNERS II USA LP; TURBIC INC; GARY MATTHEWS; ERIC KANTER; ERIC FRY; GREG JOSEFOWICZ; AND STACEY RAUCH, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

------------------------------------------------------------- X

**<u>Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 2

LEGAL STANDARD............................................................................................. 4

ARGUMENT ........................................................................................................ 5

   I.   Summary Judgment Is Warranted for Defendants' Section 546(e) Defense ..................... 5

     A.   Burden of Proof........................................................................ 7

     B.   Statutory Terms........................................................................ 7

     C.   The Section 546(e) Defense Does Not Apply to the Dividends. .................................. 8

     D.   Judge Drain's Opinion is Law of the Case. .................................. 9

     E.   Defendants Cannot Show Two Elements of the Section 546(e) Defense.................. 12

   II.   Summary Judgment is Warranted for Defendants' Statute of Limitations Defense......... 34

     A.   Burden of Proof........................................................................ 34

     B.   Applicable Law ......................................................................... 35

     C.   Judge Drain's Order Disposes of the Limitations Defense......................................... 35

     D.   Defendants' Late Pivot is Still Subject to the Law of the Case and is Unfounded..... 38

   III.   Summary Judgment is Warranted for Defendants' Miscellaneous Asserted Defenses.... 40

     A.   HSBC and the Outside Directors Are Estopped From Pursuing Their Miscellaneous Asserted Defenses ................................................................................ 40

     B.   The Miscellaneous Asserted Defenses Are Unsupported by Any Evidence and/or Fail as a Matter of Law .................................................................... 42

CONCLUSION.................................................................................................... 51

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*,
  2015 U.S. Dist. LEXIS 162515 (S.D.N.Y. Dec. 1, 2015) .......................................20

*Astra USA, Inc. v. Bildman*,
  375 F. App'x 129 (2d Cir. 2010) ........................................................................45

*Balderramo v. Go New York Tours Inc.*,
  668 F. Supp. 3d 207 (S.D.N.Y. 2023)...................................................................42

*Baldwin's Bank of Penn Yan v. Smith*,
  215 N.Y. 76 (1915) .............................................................................................19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................4

*Coach, Inc. v. Kmart Corps.*,
  756 F. Supp. 2d 421 (S.D.N.Y. 2010).........................................................43, 50, 51

*Cobalt Multifamily Inv'rs I, LLC v. Arden*,
  46 F. Supp. 3d 357 (S.D.N.Y. 2014)...................................................................49

*Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent
  Conveyance Litig.)*,
  946 F.3d 66 (2d Cir. 2019) (*Tribune II*)............................................................10, 16

*Dixon v. City of Syracuse*,
  No. 5:20-CV-381, 2024 WL 4227775 (N.D.N.Y. Sept. 18, 2024).........................40

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
  323 F. Supp. 3d 393 (S.D.N.Y. 2018)..................................................................51

*Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*,
  No. 09 Civ. 9802(RJS), 2010 WL 1838730 (S.D.N.Y. May 4, 2010)....................34

*FDIC v. Giammettei*,
  34 F.3d 51 (2d Cir. 1994)...............................................................................4, 43

*Gass v. Mamedova-Braz*,
  No. 15 CIV. 3799 (ER), 2017 WL 3588944 (S.D.N.Y. Aug. 18, 2017) .................44

*Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*,
  450 B.R. 414 (Bankr. S.D.N.Y. 2011)..................................................................33

*Genger v. Genger (In re Genger)*,
Nos. 19-13895-JLG, 20-01010-jlg, 2021 Bankr. LEXIS 2190 (Bankr. S.D.N.Y. Aug. 12, 2021) ................................................................................................................................34

*Glob. Crossing Estate Representative v. Alta Partners Holdings LDC (In re Glob. Crossing, Ltd.)*,
385 B.R. 52 (Bankr. S.D.N.Y. 2008) ...............................................................................25, 33

*Gordon v. Webster (In re Webster)*,
629 B.R. 654 (Bankr. N.D. Ga. 2021) ....................................................................................35

*Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*,
Nos. 08-15051 (SMB), 10-5456 (SMB), 2012 Bankr. LEXIS 4799 (Bankr. S.D.N.Y. Oct. 12, 2012) ........................................................................................................................50

*Gustavia Home, LLC v. Hoyer*,
362 F. Supp. 3d 71 (E.D.N.Y. 2019) ......................................................................................46

*Halperin v. Arawak IX, L.P. (In re HRB Winddown, Inc.)*,
Nos. 19-12689 (BLS), 21-51412 (BLS), 2024 Bankr. LEXIS 618 (Bankr. D. Del. Mar. 13, 2024) ......................................................................................................................11

*Halperin v. Morgan Stanley Inv. Mgmt. Inc. (In re Tops Holding II Corp.)*,
No. 22-Civ-9450 (NSR), 2023 U.S. Dist. LEXIS 2749 (S.D.N.Y. Jan. 6, 2023) .............36, 37

*Holliday v. Credit Suisse Sec. (USA) LLC (Boston Generating II)*,
2021 WL 4150523 (S.D.N.Y. Sept. 12, 2021) ........................................................................31

*Holliday v. Credit Suisse Sec. (USA) LLC (In re Bos. Generating, LLC)*,
No. 21-2543-BR, 2024 U.S. App. LEXIS 23800 (2d Cir. Sept. 19, 2024) ................11, 30, 31

*Hurwitz v. Fung Holdings (1937) Limited et al. (In re GBG USA Inc.)*,
No. 23-1022 (MEW), 2024 WL 5114996 (Bankr. S.D.N.Y. Dec. 16, 2024) .................. passim

*IIG Glob. Trade Fin. Fund Ltd. v. Int'l Inv. Grp (In re IIG Glob. Trade Fin. Fund Ltd.)*,
2024 Bankr. LEXIS 2728 (Bankr. S.D.N.Y. Nov. 8, 2024) ........................................... passim

*In re: Boston Generating LLC*,
617 B.R. 442 (Bankr. S.D.N.Y. 2020) ........................................................................... passim

*In re CBI Holding Co., Inc.*,
419 B.R. 553 (S.D.N.Y. 2009) ................................................................................................50

*In re Cohen*,
422 B.R. 350 (E.D.N.Y. 2010) ..........................................................................................44, 46

*In re Corp. Res. Servs. Inc.*,
564 B.R. 196 (Bankr. S.D.N.Y. 2017) ....................................................................................47

*In re Crown Vantage, Inc.*,
     No. C-02-3838 MMC, 2006 WL 2348850 (N.D. Cal. Aug. 11, 2006) ..................................29

*In re CVAH, Inc.*,
     570 B.R. 816 (Bankr. D. Idaho 2017) ...............................................................................35, 37

*In re Donald Sheldon & Co., Inc.*,
     153 B.R. 661 (Bankr. S.D.N.Y. 1993) ...............................................................................43, 51

*In re Enron Creditors Recovery Corp.*,
     422 B.R. 423 (S.D.N.Y. 2009), *aff'd sub nom. Enron Creditors Recovery Corp. v.
     Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011) ...................................................................29

*In re Glob. Crossing, Ltd.*,
     385 BR 52 (Bankr. S.D.N.Y. 2008) ....................................................................................24, 25

*In re Greektown*,
     621 B.R. 797 (Bankr. E.D. Mich. 2020) ....................................................................26, 27, 28

*In re Maxus Energy Corp.*,
     2022 Bankr. LEXIS 1748 .........................................................................................................35

*In re The Mediators, Inc.*,
     105 F.3d 822 (2d Cir. 1997) .....................................................................................................49

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
     117 F. Supp. 3d 276 (S.D.N.Y. 2015) ...........................................................................40, 41, 42

*In re Nine W. LBO Sec. Litig.*,
     87 F.4th 130 (2d Cir. 2023), *cert. denied sub nom. Stafiniak v. Kirschner as Tr. of
     NWHI Litig. Tr.*, 144 S. Ct. 2551 (2024) ...................................................................... passim

*In re Saucier*,
     353 B.R. 383 (Bankr. D. Conn. 2006) .....................................................................................45

*In re Schultz*,
     250 B.R. 22 (Bankr. E.D.N.Y. 2000) .......................................................................................44

*In re Smith*,
     2022 Bankr. LEXIS 1533 .........................................................................................................35

*In re Vebeliunas*,
     332 F.3d 85 (2d Cir. 2003) .......................................................................................................44

*In re Verestar, Inc.*,
     343 B.R. 444 (Bankr. S.D.N.Y. 2006) ......................................................................................49

*In re Wansdown Props. Corp. N.V.*,
   647 B.R. 23 (Bankr. S.D.N.Y. 2022) ...................................................................4

*In re Wythe Berry Fee Owner LLC*,
   654 B.R. 524 (Bankr. S.D.N.Y. 2023) .................................................................4

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
   263 B.R. 406 (S.D.N.Y. 2001) ...........................................................................23

*Kew v. Town of Northfield, VT*,
   No. 5:19-CV-78, 2020 WL 13857283 (D. Vt. Oct. 21, 2020) ...........................43

*Kings Premium Serv. Corp. v. Mfrs. Hanover Tr. Co.*,
   115 A.D.2d 707 (N.Y. App. Div. 1985) .............................................................10

*Kings Premium Service Corp. v. Manufacturer's Hanover Trust Co.*,
   496 N.Y.S.2d 524 (2d Dep't. 1985) ...................................................................19

*Klaper v. Cypress Hills Cemetery*,
   No. 10-CV-1811 NGG LB, 2014 WL 1343449 (E.D.N.Y. Mar. 31, 2014), *aff'd*, 593
   F. App'x 89 (2d Cir. 2015) ................................................................................11

*Legal Recovery Assocs. LLC v. Brenes L. Grp., P.C.*,
   No. 22CV1778ERBCM, 2024 WL 1073119 (S.D.N.Y. Feb. 13, 2024) ...............43

*Manolis v. Brecher*,
   634 F. App'x 337 (2d Cir. 2016) ........................................................................10

*Merit Management Group, LP v. FTI Consulting, Inc.*,
   583 U.S. 366 (2018) ..................................................................................... passim

*Mitchell v. Zagaroli (In re Zagaroli)*,
   2020 Bankr. LEXIS 3111 (Bankr. W.D.N.C. Nov. 3, 2020) .............................35

*Monahan v. New York City Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 2000) ..............................................................................49

*Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*,
   2021 WL 4173929 (S.D.N.Y. Sept. 14, 2021) ...................................................42

*Murphy v. ACAS, LLC (In re New Eng. Confectionary Co.)*,
   2019 Bankr. LEXIS 2281 (Bankr. D. Mass. July 19, 2019) ..............................35

*NextWave Pers. Communs., Inc. v. FCC (In re NextWave Pers. Communs., Inc.)*,
   235 B.R. 305 (Bankr. S.D.N.Y. 1999) ...............................................................48

*Novak v. Salinas (In re Salinas)*,
   Nos. 21-20541 (JJT), 21-02011 (JJT), 2023 Bankr. LEXIS 685 (Bankr. D. Conn. Mar.
   16, 2023) .................................................................................................................................49

*Ogilvy Group Sweden, AB v. Tiger Telematics, Inc.*,
   2006 WL 547785 (S.D.N.Y. Mar. 7, 2006) ...........................................................................42

*Osherow v. Porras (In re Porras)*,
   312 B.R. 81 (Bankr. W.D. Tex. 2004) ...................................................................................35

*Pereira v. Farace*,
   413 F.3d 330 (2d Cir. 2005) ..................................................................................................43

*Pereira v. Omansky (In re Omansky)*,
   2022 Bankr. LEXIS 2535 (Bankr., S.D.N.Y. Sept. 15, 2022) .........................................35, 37

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014) ..............................................................................................................42

*Pridemark, Inc. v. Commissioner*,
   345 F.2d 35 (4th Cir. 1965) ...................................................................................................38

*Rapf v. Suffolk Cnty. of New York*,
   755 F.2d 282 (2d Cir. 1985) ..............................................................................................43, 45

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   No. 14-cv-4394 (AJN) (BCM), 2016 WL 4613390 (S.D.N.Y. Aug. 31, 2016) .....................51

*Salus Mundi Found. v. Comm'r*,
   776 F.3d 1010 (9th Cir. 2014) ...............................................................................................39

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
   580 U.S. 328 (2017) ......................................................................................................3, 9, 45

*Schmidt v. Stone*,
   No. 14 CV 2519 (RJD), 2018 WL 4522082 (E.D.N.Y. Jan. 29, 2018) ....................................9

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...................................................................................50

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   655 B.R. 149 (Bankr. S.D.N.Y. 2023) ...................................................................................45

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
   2018 Bankr. LEXIS 828 (Bankr. S.D.N.Y. Mar. 22, 2018) ...................................................11

*Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.)*,
   347 B.R. 17 (Bankr. W.D. Pa. 2006) .....................................................................................35

*Simuro v. Shedd*,
   No. 2:13-CV-00030, 2017 WL 3720766 (D. Vt. June 19, 2017) ...........................................47

*TBL Licensing LLC v. Comm'r*,
   158 T.C. 1 (2022), *aff'd*, 82 F.4th 12 (1st Cir. 2023) ................................................................38

*Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.*,
   371 F.3d 105 (2d Cir. 2004) ...........................................................................................................47

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
   464 B.R. 606 (Bankr. S.D.N.Y. 2012) ...........................................................................................48

*TufAmerica, Inc. v. Codigo Music LLC*,
   162 F. Supp. 3d 295 (S.D.N.Y. 2016) .............................................................................................4

*Unigene Lab'ys, Inc. v. Apotex, Inc.*,
   2010 WL 2730471 (S.D.N.Y. July 7, 2010), *aff'd*, 655 F.3d 1352 (Fed. Cir. 2011) ..............41

*United States v. Milstein*,
   401 F.3d 53 (2d Cir. 2005) .............................................................................................................45

*Vieira v. Gaither (In re Gaither)*,
   595 B.R. 201 (Bankr. D.S.C. 2018) ...............................................................................................35

*Wechsler v. Hunt Health Sys. Ltd.*,
   No. 94 Civ. 8294, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) ...........................................41

*Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Res., Inc.)*,
   198 B.R. 352 (Bankr. D. Colo. 1996), *aff'd,* 354 F.3d 1246 (10th Cir. 2004) .................24, 26

*Wimberly v. Experian Info. Sols.*,
   No. 1:18-cv-6058-MKV, 2021 U.S. Dist. LEXIS 18748 (S.D.N.Y. Feb. 1, 2021)...................9

*Zarcone v. Perry*,
   78 A.D.2d 70 (2d Dep't 1980) ........................................................................................................48

**STATUTES**

11 U.S.C.
   § 101(22)(A) ............................................................................................................... passim
   § 502...........................................................................................................1, 2, 41, 50
   § 544............................................................................................................... passim
   § 546............................................................................................................... passim
   § 550...........................................................................................................1, 47, 48
   § 548.....................................................................................................................49

26 U.S.C.
    § 6901.................................................................................................................39
    § 6901(a)...........................................................................................................40
    § 6901(h)...........................................................................................................39

Internal Rev. Code § 368(a)(1)(F) ...................................................................38, 39, 40

Internal Rev. Code § 6502 ...........................................................................................35

Internal Rev. Code § 368(a)(l)(F)................................................................................39

N.Y. Bus. & Corp. Law § 720 ......................................................................................47

**OTHER AUTHORITIES**

26 C.F.R. § 301.6901–1(b) ...........................................................................................40

2d Cir. R. 32.1.1(a) .......................................................................................................12

Fed. R. Civ. P. 26(e).....................................................................................................42

Fed. R. Civ. P. 56(a).......................................................................................................4

Fed. R. Bankr. P. 7056 ...................................................................................................4

H.R. Rep. No. 109-648 .................................................................................................32

L. R. 33.3(c) ..................................................................................................................40

N.Y. C.P.L.R. § 213(8) ................................................................................................35

Neil M. Garfinkel, No Way Out: Section 546(e) Is No Escape for the Public Shareholder
    of a Failed LBO, 1991 Colum. Bus. L. Rev. 51, 64-65 (1991) ...............................32

R. Stephen McNeill, "Avoiding the Unavoidable: A Practitioner's Guide to Federal
    Governmental Creditor Fraudulent Conveyance Actions," 92 Am Bankr. L.J. 335,
    346 (2018).................................................................................................................35

Treas. Reg.
    §§ 301.7701-2 and 301.7701-3 .................................................................................39
    § l.1502-75(d)(2).......................................................................................................39

Alan D. Halperin, as litigation trustee (the "Trustee") of the Tops Holding Litigation Trust (the "Trust") of Tops Holding II Corporation and its affiliated debtors[1] ("Tops" or the "Company"), by and through his undersigned counsel, hereby moves for summary judgment on the following affirmative defenses asserted by Defendants Morgan Stanley Capital Partners V U.S. Holdco LLC ("MS Cap V"), Morgan Stanley Investment Management ("MSIM"), Gary Matthews, Eric Fry, Eric Kanter (MS Cap V, MSIM, Matthews, Fry, and Kanter collectively, the "MS Defendants" or "Morgan Stanley"), HSBC Equity Partners USA, L.P. ("HSBC I"), HSBC Private Equity Partners II USA LP ("HSBC II", and together with HSBC I, "HSBC"), Greg Josefowicz, and Stacey Rauch (Josefowicz and Rauch, collectively, the "Outside Directors," and together with the MS Defendants and HSBC, "Defendants"):

    i.    Section 546(e) of the Bankruptcy Code (asserted by all Defendants);

    ii.    the statute of limitations (asserted by all Defendants);

    iii.    equitable estoppel (asserted by HSBC and the Outside Directors);

    iv.    waiver or laches (asserted by all Defendants);
    v.    unclean hands (asserted by all Defendants);

    vi.    speculative damages (asserted by Morgan Stanley and the Outside Directors);

    vii.    setoff or recoupment (asserted by Morgan Stanley and HSBC);

    viii.    good faith under NY DCL § 277, or 11 U.S.C. § 544 or 11 U.S.C. § 550(b) of the Bankruptcy Code (asserted by HSBC);

    ix.    the bar on double recovery (asserted by Morgan Stanley and HSBC);

    x.    *in pari delicto* (asserted by HSBC);

    xi.    res judicata (asserted by HSBC);

    xii.    Section 502(h) of the Bankruptcy Code (asserted by HSBC);

---

[1] The Debtors include Tops Holding II Corporation, Tops MBO Corporation, Tops Holding LLC, Tops Markets, LLC, Tops Markets II Corporation, Tops PT, LLC, Tops Gift Card Company, LLC, Erie Logistics LLC, and TM1, LLC.

xiii.    non-debtor property (asserted by HSBC);

xiv.    failure to mitigate (asserted by HSBC); and

xv.    ratification (asserted by HSBC),[2]

and states as follows:

## INTRODUCTION

Prior to 2007, Tops was a healthy regional grocery chain employing thousands of unionized employees in the Northeast.  In late 2007, Tops was purchased by a group of private equity investors (the "Private Equity Investors") led by Morgan Stanley.  During their ownership of the company—from 2007 to 2013—the Private Equity Investors caused the company's pension plan obligations to balloon to unsustainable levels; starved it of the baseline capital expenditure spending necessary for its survival; loaded Tops with over $650 million of debt; and gutted it of cash through a series of unlawful dividends distributed—despite the Company's insolvency—into their own pockets.  In total, the Private Equity Investors extracted over $376 million from Tops via a series of unlawful dividends distributed in October 2009 (the "2009 Dividend"), July 2010 (the "2010 Dividend"), December 2012 (the "2012 Dividend"), and May 2013 (the "2013 Dividend," and, collectively, the "Dividends").[3]  As a result of the Private Equity Investors' profiteering, the Company filed for bankruptcy on February 21, 2018.

Defendants now assert a wide variety of affirmative defenses in an effort to avoid culpability for the damage they caused by looting Tops.  As set forth in this Motion, each and every one of the affirmative defenses challenged in this motion is inapplicable under the law, is

---

[2] Collectively, the unclean hands, equitable estoppel, laches, waiver, speculative damages, *in pari delicto*, setoff/recoupment, good faith, res judicata, Section 502(h) of the Bankruptcy Code, non-debtor property, failure to mitigate, and ratification defenses are referred to as the Miscellaneous Asserted Defenses.  The Miscellaneous Asserted Defenses are also identified in Appendix 1.

[3] The dividend distributions are identified in Appendix 2.

unsupported by any record evidence, and/or has been waived. As a result, each defense fails as a matter of law and should be dismissed or stricken.

Defendants' primary defense is that Section 546(e) of the Bankruptcy Code bars the Trustee's fraudulent transfer claims (the "Section 546(e) Defense"). For the Section 546(e) Defense, Defendants cannot show any genuine dispute of material fact for at least two of its elements: (1) the Dividends were not paid by or to (or for the benefit of) a "financial institution," and (2) the Dividends were not transfers "in connection with a securities contract."

Defendants' secondary defense is that the statutes of limitations for avoiding the 2009 and 2010 Dividends have lapsed (the "Statute of Limitations Defense"). Defendants cannot show any genuine dispute of material fact for the Statute of Limitations Defense because the Dividends occurred within the statutory ten–year limitation period applicable to fraudulent transfers for which the IRS is a triggering creditor under Section 544(b) of the Bankruptcy Code.

Indeed, Defendants' assertions of the Section 546(e) and Statute of Limitations Defenses were already _rejected_ by Judge Drain at the motion to dismiss stage, which is now law of the case, and nothing in the discovery record has altered those conclusions. Without any dispute of material fact adduced in discovery, Judge Drain's reasoning for dismissing these defenses on the pleadings holds true at summary judgment. As a result, Defendants' Section 546(e) and Statute of Limitations Defenses fail as a matter of law and should be dismissed.

In addition, Defendants have collectively asserted a hodge-podge of other affirmative defenses—the Miscellaneous Asserted Defenses—in a kitchen-sink effort to backstop their failure of proof on the Section 546(e) and Statute of Limitations Defenses. These Miscellaneous Asserted Defenses fail for two reasons. *First*, HSBC and the Outside Directors refused to respond to the Trustee's contention interrogatories seeking the bases for them, and are estopped from asserting

them now. *Second*, notwithstanding HSBC and the Outside Directors' waiver, each of the

Miscellaneous Affirmative Defenses is either inapplicable as a matter of law or utterly unsupported

by any evidence.

Accordingly, for these and the additional reasons set forth below, each of these affirmative

defenses is subject to summary judgment and should be dismissed.

## LEGAL STANDARD

Summary judgment motions in Bankruptcy Court are governed by Federal Rule of Civil

Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy

Procedure 7056. *In re Wansdown Props. Corp. N.V.*, 647 B.R. 23, 32 (Bankr. S.D.N.Y. 2022).

"Summary judgment is appropriate when the record demonstrates that there are no genuine

disputes as to any material facts and that one party is entitled to judgment as a matter of law." *Id.*

(citing Fed. R. Civ. P. 56(a)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

For an affirmative defense, the Court grants summary judgment where "the record in a

light most favorable to the defendant reveals the absence of evidence supporting an essential

element of the defense." *FDIC v. Giammettei*, 34 F.3d 51, 55 (2d Cir. 1994). "[W]here a plaintiff

seeks summary judgment to 'challenge the legal sufficiency of an affirmative defense—on which

the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by

showing that there is an absence of evidence to support an essential element of the nonmoving

party's case.'" *In re Wythe Berry Fee Owner LLC*, 654 B.R. 524, 552 (Bankr. S.D.N.Y. 2023)

(quoting *Giammettei*, 34 F.3d at 54); *see also TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp.

3d 295, 334 (S.D.N.Y. 2016) ("[W]here the non-movant fails to introduce any evidence sufficient

to support an essential element of a defense, the court may properly grant summary judgment

dismissing such a defense as a matter of law.") (cleaned up).

## **ARGUMENT**

**I.    Summary Judgment Is Warranted for Defendants' Section 546(e) Defense**

The Court should grant summary judgment dismissing the Section 546(e) Defense. Defendants raise the Section 546(e) Defense as to Counts 1–8 of the Trustee's Complaint, which correspond to the Trustee's claims to avoid the 2009, 2010, 2012, and 2013 dividends (the "Dividends") under Section 544(b) of the Bankruptcy Code and New York law.[4]  Defendants also intend to raise a preemption defense based on Section 546(e) to Counts 9–10, which correspond to the Trustee's illegal dividend claims for the 2012 and 2013 Dividends.[5]  At the pre-motion hearing, counsel for Morgan Stanley represented that Defendants are no longer asserting the defense with respect to the 2010 Dividend, so there is no dispute that judgment should be granted striking the defense for the 2010 Dividend.  SOMF ¶ 34 (Ex. 29, Oct. 30, 2024 Pre-Motion Hearing Tr. ("Pre-Motion Hearing") at 13:18-23).  As set forth herein, there is likewise no merit to the defense for the other transfers.

In a detailed opinion denying Defendants' motions to dismiss, Judge Drain held that the Section 546(e) Defense did not apply to the Dividends.  Dkt. Nos. 87, 88.  He denied Defendants' motions to dismiss on legal grounds after a review of the very same evidence now in front of the Court.  *Id.*  There have been no intervening changes in the law and nothing arose in discovery in

---

[4] *See* Dkt. 141, Morgan Stanley Capital Partners V's First Amended Answer and Affirmative Defenses (Eleventh Affirmative Defense); Dkt. 142, Morgan Stanley Investment Management's First Amended Answer and Affirmative Defenses (Ninth Affirmative Defense); Dkt. 129, HSBC Equity Partners USA, L.P.'s Answer to First Amended Complaint (Fourth Affirmative Defense); Dkt. 130, HSBC Private Equity Partners II USA LP's Answer to First Amended Complaint (Fourth Affirmative Defense); Dkt. 145, Gary Matthews' First Amended Answer and Affirmative Defenses (Tenth Affirmative Defense); Dkt. 144, Eric Kanter's First Amended Answer and Affirmative Defenses (Tenth Affirmative Defense); Dkt. 143, Eric Fry's First Amended Answer and Affirmative Defenses (Tenth Affirmative Defense); Dkt. 140, Stacey Rauch's Amended Answer to First Amended Complaint (Seventh Affirmative Defense); Dkt. 139, Greg Josefowicz' Amended Answer to First Amended Complaint (Seventh Affirmative Defense).
[5] *See* Morgan Stanley Defendants' Pre-Motion Letter (Dkt. 199), dated Aug. 27, 2024 at 1 fn. 4.

support of Defendants' position.  Accordingly, the denial of that motion is the law of the case and dictates the outcome of this Motion.

The record confirms that conclusion.  The Section 546(e) analysis commences by defining the relevant transfers.  Here, as Defendants admitted at the Pre-Motion Hearing,[6] the transfers are the Dividends, not the Notes Offerings.  Under *Merit Management Group, LP v. FTI Consulting, Inc.*, 583 U.S. 366 (2018) ("*Merit Mgmt*"), the defense must thus rise or fall by application to the Dividends themselves.  Because the defense does not apply to the pure, gratuitous Dividends, Defendants are forced to contort the law and take extreme positions that diverge from existing precedent.

As noted above, Section 546(e) does not apply here for two separate reasons.  First, Defendants cannot show the participation of a "financial institution" as a matter of law.  Neither Tops, nor Morgan Stanley, nor HSBC was a customer of an agent acting for it in connection with a securities contract.  Second, Defendants cannot show that the Dividends were paid "in connection with a securities contract."  The use of the proceeds from closed Notes Offerings does not render the Dividends (or any other subsequent use of those proceeds) "in connection with a securities contract."  In addition to violating *Merit Management*, Defendants' extreme positions—overextending the exception to the point of breaking for both Section 546(e) and the entire fraudulent transfer statutory regime—would have the type of "drastic implications" that the Second Circuit has recently cautioned against and would "not further Congress's purpose." *In re*

---

[6] SOMF ¶ 34, Ex. 29 at 17:5-9 ("The transfer that the Trustee is seeking to avoid here is the final step of this transaction; the payment of the dividend from Tops to the shareholders. So that is step four when the money was transferred from Tops Corporation's Bank of America account to the shareholders.").

*Nine W. LBO Sec. Litig.*, 87 F.4th 130, 149 (2d Cir. 2023), *cert. denied sub nom. Stafiniak v. Kirschner as Tr. of NWHI Litig. Tr.,* 144 S. Ct. 2551 (2024).

### A.    Burden of Proof

Section 546(e) is an affirmative defense for which Defendants bear the burden of proof on each element. *IIG Glob. Trade Fin. Fund Ltd. v. Int'l Inv. Grp (In re IIG Glob. Trade Fin. Fund Ltd.)*, 2024 Bankr. LEXIS 2728, at *14 (Bankr. S.D.N.Y. Nov. 8, 2024).

### B.    Statutory Terms

The Section 546(e) Defense carves out a limited exception to a trustee's avoidance power. As relevant to the contentions in this case:

> the trustee may not avoid a transfer ... made by or to (or for the benefit of) a ... financial institution ... in connection with a securities contract ....

11 U.S.C. § 546(e).

The term "transfer" refers to the "overarching transfer that the trustee seeks to avoid under one of the substantive avoidance provisions." *Merit Mgmt.*, 583 U.S. at 378.  Under *Merit Management*, "to qualify for protection under the securities safe harbor, § 546(e) provides that ***the otherwise avoidable transfer <u>itself</u> be a transfer that meets the safe harbor criteria*.**" 583 U.S. at 380–81 (emphasis added); *see also IIG Global Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728, at *41–42, *73 (same); *Hurwitz v. Fung Holdings (1937) Limited et al. (In re GBG USA Inc.)*, No. 23–1022 (MEW), 2024 WL 5114996 (Bankr. S.D.N.Y. Dec. 16, 2024) (same).

The term "financial institution" is defined to include a "customer" of a "commercial or savings bank" only when that bank "is acting as agent or custodian for a customer ... in connection with a securities contract ...."  11 U.S.C. § 101(22)(A).

Under the plain terms of Sections 546(e) and 101(22)(A), the Trustee is entitled to summary judgment on the Section 546(e) Defense.

### C.    The Section 546(e) Defense Does Not Apply to the Dividends

Defendants cannot show any genuine dispute of material fact for at least two elements of their Section 546(e) Defense:

(1)    The Dividends were not paid by or to (or for the benefit of) a "financial institution."

(2)    The Dividends were not transfers "in connection with a securities contract."

There is no dispute of material fact regarding how the Dividends were transferred. The Trustee seeks to avoid four gratuitous Dividends under the Section 544(b) avoidance powers. SOMF ¶¶ 4–11, 15, 16, 21–23. Those four Dividends are the transfers the Court must analyze within the rubric of Section 546(e). *Merit Mgmt.*, 583 U.S. at 378; SOMF ¶ 34, Ex. 29 at 11:24–12.[7] The individual Dividends at issue are set out in Appendix 2. The relevant Dividends paid to MS Cap V conformed to the following structure:



The relevant Dividends paid to HSBC conformed to the following structure:



---

[7] *See also* Dkt. 87, Memorandum of Decision on Motions to Dismiss (the "MTD Opinion") at 62 ("What clearly is not a 'settlement payment' in respect of a securities contract for purposes of section 546(e), however, is a dividend, and because it is the 2009, 2012, and 2013 dividends that the Complaint seeks to avoid (transfers A→D), not the issuance of the private notes (transfers A→B), *Merit Management* requires that they not be safe-harbored under section 546(e)").

Under Judge Drain's opinion, which is law of the case, the statutory text, *Merit Management*, and other existing case law, these pure Dividends are not subject to the Section 546(e) Defense.

### D.   Judge Drain's Opinion is Law of the Case

#### i.   *Judge Drain Thoroughly and Advisedly Rejected Defendants' Section 546(e) Defense*

In his final opinion before retiring from the bench, Judge Drain rejected Defendants' Section 546(e) Defense, and his ruling is the law of the case. *Wimberly v. Experian Info. Sols.*, No. 1:18-cv-6058-MKV, 2021 U.S. Dist. LEXIS 18748, at *9 (S.D.N.Y. Feb. 1, 2021) (refusing to revisit holding made on motion to dismiss because it was law of the case) (citing *Schmidt v. Stone*, No. 14 CV 2519 (RJD), 2018 WL 4522082, at *1 (E.D.N.Y. Jan. 29, 2018)). Section 546(e) was the subject of significant briefing and a comprehensive ruling by Judge Drain. *See* Dkts. 87–88. Defendants moved to dismiss the claims as to the 2009, 2012, and 2013 Dividends, claiming that those Dividends were integrated with the corresponding Notes Offerings and thus subject to Section 546(e) of the Bankruptcy Code. This is the same defense that Defendants continue to advance here and that was rightly rejected by Judge Drain.

***First***, Judge Drain found that the gratuitous Dividends were not "in connection with" the Notes Offerings because the Trustee seeks "to avoid the dividends, not the notes offerings." Dkt. 87 at 62. He concluded that, under the Supreme Court's precedent in *Merit Management*, "to qualify for protection under the securities safe harbor, § 546(e) provides that the otherwise avoidable transfer itself be a transfer that meets the safe harbor criteria." *Id.* at 64 (quoting *Merit Mgmt.*, 583 U.S. at 380–81). Reviewing the offering memoranda and Notes Offerings, and their

"use of proceeds" provisions, Judge Drain rejected Defendants' argument that the Dividends were integrated into or otherwise "in connection with" the Notes Offerings. *Id.* at 64–69.

**Second**, Judge Drain found that Tops and Defendants were not "financial institutions" within the meaning of Section 101(22)(A) of the Bankruptcy Code. *Id.* at 69–73. He rejected Defendants' argument that Tops or Defendants were customers of an agent acting in connection with a securities contract based on the wire transfers for the Dividends. *Id.* He held that "a bank account holder's relationship with its bank is merely a creditor-debtor relationship." *Id.* at 70 (quoting *Kings Premium Serv. Corp. v. Mfrs. Hanover Tr. Co.*, 115 A.D.2d 707, 708–09 (N.Y. App. Div. 1985)). Notably, Judge Drain told Defendants exactly what evidence they needed to provide during discovery to bypass this legal conclusion: a "paying agent or custodial agreement for any party to the dividends (or, for that matter, the notes offerings) such as those that were before the courts in the Circuit's most recent *Tribune* decisions and in *Nine West* and *Boston Generating.*" *Id.* at 62. In more than three years of discovery, Defendants have produced no such evidence because none exists.

Defendants then sought interlocutory review at the district court. Dkts. 97–107. District Court Judge Nelson Román rejected Defendants' argument. Opinion and Order, 7:22-cv-9450-NSR, Dkt. 10. Judge Román concluded that Judge Drain was "best-equipped to conduct such an inquiry" and "judiciously did so in its detailed and well-researched opinion." *Id.*

### ii. Judge Drain's Rejection of the Section 546(e) Defense is the Law of the Case

Judge Drain's opinion—as reviewed by Judge Román—is the law of the case. The law of the case doctrine "forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings in the same case." *Manolis v. Brecher*, 634 F. App'x 337, 338 (2d Cir. 2016). Courts may revisit a prior decision where an intervening change of controlling law

has taken place since its issue, but to do so, courts first determine if the new authorities actually reflect a relevant intervening change in the law. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2018 Bankr. LEXIS 828, at \*12–13 (Bankr. S.D.N.Y. Mar. 22, 2018). But where, as here, the ruling on the Motions to Dismiss contained undisturbed legal holdings, those legal holdings remain law of the case at summary judgment. *Klaper v. Cypress Hills Cemetery*, No. 10-CV-1811 NGG LB, 2014 WL 1343449, at \*4 (E.D.N.Y. Mar. 31, 2014) (holding that a court's interpretation of an unambiguous contractual clause at the motion to dismiss stage is the law of the case that applies at summary judgment), *aff'd*, 593 F. App'x 89 (2d Cir. 2015) (internal citations omitted). Judge Drain's legal conclusions regarding the Section 546(e) Defense remain controlling law of the case and have guided the parties' subsequent adjudication of the issue. And Defendants' have come forth with no new material facts during discovery.

Here, there has been no relevant intervening change of controlling law to compel reconsideration of Judge Drain's conclusion. Judge Drain's "judicious and well-researched opinion" was based on binding Supreme Court and Second Circuit precedent. Since the ruling, Judge Drain's opinion has been cited favorably by a number of other courts, reflecting its acceptance. *See In re IIG Glob. Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728, at \*58–59; *Hurwitz*, 2024 WL 5114996, at \*21; *Halperin v. Arawak IX, L.P. (In re HRB Winddown, Inc.)*, Nos. 19-12689 (BLS), 21-51412 (BLS), 2024 Bankr. LEXIS 618, at \*21 n.80 (Bankr. D. Del. Mar. 13, 2024).

Defendants will try to claim that the Second Circuit's recent decision in *Boston Generating* changed controlling law. *See Holliday v. Credit Suisse Sec. (USA) LLC (In re Bos. Generating, LLC)*, No. 21-2543-BR, 2024 U.S. App. LEXIS 23800 (2d Cir. Sept. 19, 2024). As discussed further below, this is wrong. First, by definition, the expressly non-precedential summary order

in *Boston Generating* (the "Summary Order") is *not* controlling law.  *In re IIG Glob. Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728, at \*59, \*71–73 (concluding that the Summary Order is "without precedential effect under Second Circuit rules"); *see* 2d Cir. R. 32.1.1(a) ("Rulings by summary order do not have precedential effect.").  Second, even if the Summary Order had precedential effect (which it does not), a review of the Summary Order demonstrates that the *Boston Generating* court did not change controlling law.  In fact, the Summary Order bolsters Judge Drain's decision, as described further below, which is why other courts continue to cite Judge Drain's opinion as authoritative even after *Boston Generating*.  *See, e.g.*, *In re IIG Glob. Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728, at \*59–60 (relying on Judge Drain's opinion on section 546(e) after the issuance of the Summary Order).

Thus, because there has been no intervening change in controlling law or different material facts, the law of the case doctrine precludes Defendants from re-arguing Judge Drain's prior holding that the Dividends are not protected by the Section 546(e).

### E.    Defendants Cannot Show Two Elements of the Section 546(e) Defense

Even if Judge Drain's prior opinion was not the law of the case (which it is), the relevant case law and undisputed material facts nevertheless establish that the Dividends are not safe harbored.

#### i.    Under **Merit Management**, *the Defense Must Focus on the Dividends, Not the Notes Offerings*

For the safe harbor to apply, the Dividends <u>themselves</u> must qualify for the safe harbor. Under *Merit Management*, "to qualify for protection under the securities safe harbor, § 546(e) provides that **the otherwise avoidable transfer <u>itself</u> be a transfer that meets the safe harbor criteria**."  583 U.S. at 367.  In coming to this conclusion, the Supreme Court in *Merit Management* considered a circuit split between the Second, Third, Sixth, and Eighth Circuits, which broadly

applied Section 546(e) to transfers where a bank was a mere conduit or intermediary between the transferor and transferee, and the Seventh and Eleventh Circuits, which rejected the applicability of Section 546(e) where a financial institution was an intermediary.  The Supreme Court agreed with the Seventh and Eleventh Circuits and disagreed with the Second Circuit:  An intermediary step within the overarching transfer was insufficient to trigger the safe harbor.

The debtor in *Merit Management*—Valley View Downs, LP ("Valley View")—was in the horse racing and gambling business. Valley View had been competing with a different entity, Bedford Downs Management Corporation ("Bedford Downs"), to obtain a harness-racing license from the state of Pennsylvania.  After several years of competition, the parties agreed that Valley View would obtain the license and purchase Bedford Downs, and the combined entity would then operate the "racino."

The transaction was structured such that Valley View would purchase 100 percent of Bedford Downs' stock for $55 million.  The transaction would be funded via financing provided by the Cayman Islands branch of Credit Suisse. Credit Suisse would wire the purchase price to Citizens Bank of Pennsylvania, and Citizens Bank in turn would distribute payments to the Bedford Downs shareholders. One shareholder was Merit Management Group, LP ("Merit Management"), which received approximately $16.5 million for its shares.

After Valley View entered bankruptcy, the trustee, FTI, sued Merit Management to avoid the payment Merit Management received as consideration for the sale of its portion of Bedford Downs' stock.  Merit Management interposed the Section 546(e) safe harbor as a defense, claiming that the participation of Credit Suisse and Citizens Bank in the acquisition transaction barred avoidance of the transfer to Merit Management.

Within that factual context, the Court in *Merit Management* framed the issue as follows:

> [H]ow the safe harbor operates in the context of a transfer that was executed via
> one or more transactions, *e.g.*, a transfer from A → D that was executed via B and
> C as intermediaries, such that the component parts of the transfer include A → B
> → C → D. If a trustee seeks to avoid the A → D transfer, and the §546(e) safe
> harbor is invoked as a defense, the question becomes: When determining whether
> the §546(e) securities safe harbor saves the transfer from avoidance, should courts
> look to the transfer that the trustee seeks to avoid (i.e., A → D) to determine whether
> that transfer meets the safe-harbor criteria, or should courts look also to any
> component parts of the overarching transfer (i.e., A → B → C → D)?

583 U.S. at 369–70.

Under this framing, the Court first needed to "identify the relevant transfer to test" against

Section 546(e). *Id*. at 377–78. To answer that question, the Court concluded that "[t]he language

of § 546(e), the specific context in which that language is used, and the broader statutory structure

all support the conclusion that the relevant transfer for purposes of the § 546(e) safe-harbor inquiry

is the overarching transfer that the trustee seeks to avoid under one of the substantive avoidance

provisions." *Id*. at 378. The unanimous Court's answer was unequivocal: "The Court concludes

that the plain meaning of §546(e) dictates that ***the only relevant transfer for purposes of the safe***

***harbor is the transfer that the trustee seeks to avoid***." *Id*. at 370 (emphasis added). In *Merit*

*Management*, that specific transfer was only "the $16.5 million Valley View-to-Merit transfer"

and not "the component transactions by which that overarching transfer was executed." *Id*. at 386.

Accordingly, the relevant transfer did not involve parties covered by Section 546(e), and thus it

was not protected by the safe harbor.

This holding restricted the application of Section 546(e) and rejected the broad scope given

to the exception by the Second Circuit. It also necessarily precludes Defendants' argument here.

As for the 2009, 2012, and 2013 Dividends, Defendants' admission that the relevant transfers to

be avoided are the Dividends precludes them from wrapping in the respective Notes Offerings[8] or the intermediate "wire" banks. *See* SOMF ¶ 34, Ex. 29 at 11:25–12:2. Here, each "otherwise avoidable transfer"—each Dividend—does not "***itself*** … meet[] the safe-harbor criteria." *Merit Management*, 583 U.S. at 381 (emphasis added).

### ii. The Dividends Were Not Paid by or to a "Financial Institution"

The Dividends were not transferred by or to (or for the benefit of) a qualifying "financial institution." Section 546(e) limits the parties that can invoke the safe harbor. As relevant here, the term "financial institution" is defined to include a "customer" of a "commercial or savings bank" only when that bank "is acting as agent or custodian for a customer ... in connection with a securities contract ...." 11 U.S.C. § 101(22)(A). "At common law, an agency relationship is created when a principal manifests assent to an agent that the agent will act on the principal's behalf and be subject to the principal's control, and the agent manifests assent to the same." *In Re: Nine W. LBO Sec. Litig.,* 87 F.4th 130, 149 (2d Cir. 2023), *cert. denied sub nom. Stafiniak v. Kirschner as Tr. of NWHI Litig. Tr.,* 144 S. Ct. 2551 (2024).

As explained in more detail above, the Supreme Court in *Merit Management* held that Section 546(e) did not cover the transfer at issue in that case—from Valley View to Merit Management—even though two financial institutions—Credit Suisse, as a financer, and Citizens Bank, as a third-party escrow agent—were intermediaries in the transfer. *Id.* at 375–76.[9] Since

---

[8] Notably, the Notes Offerings could never be the starting point of an "overarching transfer" that the Trustee seeks to avoid because the Trustee cannot use its avoidance powers to avoid transfers of funds <u>into</u> the Debtor entities. The Trustee's power is to avoid transfers from the Debtors, not transfers to the Debtors.

[9] Under Defendants' view, the Supreme Court in *Merit Management* got it wrong because at least one party was a customer of Credit Suisse or Citizens Bank. While *Merit Management* left open the impact of the definition of "financial institution," that definition cannot be read to render *Merit Management* meaningless, as Defendants ask. Rather, the inclusion of customer/agent within the definition of "financial institution" requires more than was present in *Merit Management*. But this case does not require the Court to examine the contours because the existing law clearly does not allow mere wire transfers to substitute for an agency relationship in connection with a securities contract.

15

*Merit Management*, **no** court has adopted the proposition that Defendants espouse—that a mere wire transfer renders a company a "financial institution" within the relevant definition.

After *Merit Management*, the Second Circuit has considered the definition of "financial institution" on multiple occasions. Each time, it rendered opinions disposing of Defendants' claim that the Dividends here were paid by or to a qualifying financial institution. For example, in *Tribune II*, the Second Circuit revisited the holding of *Tribune I* after *Merit Management*. *See Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*, 946 F.3d 66, 72 (2d Cir. 2019) (*Tribune II*). Recognizing that, in *Merit Management*, the Supreme Court had rejected the Second Circuit's prior broad application of Section 546(e), the Second Circuit pivoted to determine whether Tribune was a customer of a bank under the definition of "financial institution." *Id*. at 75. To do so, it analyzed the role of Computershare—a trust company, depository, and paying agent to Tribune—in the Tribune leveraged buyout ("LBO"). *Id*. at 77–78. To determine whether Computershare was acting as an agent in connection with a securities contract, the Court reviewed the specific LBO securities contracts that Tribune entered with Computershare and concluded that Computershare specifically agreed to take on "multiple" specific agency functions in connection with the at-issue securities contract. *Id.* at 78. Those functions included acting as depository agent in connection with the LBO tender offer, whereby "Computershare received and held Tribune's deposit of the aggregate purchase price for the shares. … Then, Computershare received tendered shares, retained them on Tribune's behalf, and paid the tendering shareholders." *Id*. Thus, rather than applying a broad

approach, the Second Circuit confirmed that the scope of the relevant agency was to undertake acts in connection with the at-issue securities contract.

More recently, in *Nine West*, another binding opinion, the Second Circuit rejected a district court's overly broad interpretation of the definition of "financial institution."  The Second Circuit applied a narrow "transfer-by-transfer" approach in determining the relevant agency relationship, rather than a broader "contract-by-contract" approach.  *Kirschner v. Robeco Cap. Growth Funds - Robeco BP US Premium Equities (In re Nine W. LBO Sec. Litig.)*, 87 F.4th 130, 145 (2d Cir. 2023) ("*Nine West*").  The defendants in *Nine West* argued that two types of transfers were safe harbored because they were made to redeem shares in connection with an LBO.  *Id.* at 140–42. The first type of transfers were made through Wells Fargo, which acted as the paying agent to collect the shares, cancel the shares upon confirmation by Nine West, and pay the shareholders upon cancellation.  *Id.* at 140–41.  The second type of transfers were made through the ADP payroll system to certain employee-shareholders.  *Id.* at 141.  Wells Fargo received the shares in return, but the shares were automatically cancelled, and Nine West did not continue to exercise control. *Id.* at 148–49.  The district court granted the defendants' motion to dismiss under section 546(e), holding that once Wells Fargo acted as Nine West's agent in connection with shareholder transfers made pursuant to an LBO, *all* transfers made by Nine West in connection with the LBO, including those made through the ADP payroll system, were shielded from avoidance by the safe harbor.  *Id.* at 144–45.  The plaintiff appealed and, on appeal, the Second Circuit faulted the reasoning of the district court.  As the Second Circuit explained, the proper approach is to look to each *transfer* and determine "'when' a bank '*is acting as agent*' for its customer for a transfer, assuming, of course, the transfer is made in connection with a securities contract."  *Id.* at 145.  Under that transfer-by-transfer approach, a "financial institution includes bank customers only in transactions where the

bank is acting as their agent." *Id.* at 143 (internal quotation marks omitted).  The Second Circuit concluded that Wells Fargo was an agent for the first type of transfer—to the shareholders, but was not an agent for the second type of transfer—to the employees. *Id.* at 148–49.  Even though Wells Fargo received the shares for purposes of the employee-shareholder transfers, that was insufficient because Nine West did not have any control over Wells Fargo in cancelling the shares—Wells Fargo's role was ministerial, so Wells Fargo was a "contractor," not an agent. *Id.* at 149.

Even more recently, the Second Circuit reaffirmed its *Nine West* opinion in its non-precedential *Boston Generating* Summary Order. *Boston Generating*, 2024 U.S. App. LEXIS 23800, at *10–11.  In the Summary Order, the Second Circuit considered whether BosGen qualified as a financial institution due to the role of Bank of New York as BosGen's agent and depository acting for it in connection with a tender offer for repurchase of shares as part of an LBO. *Id*. at *6.  The Second Circuit concluded that the Bank of New York was an agent in connection with the Tender Offer because it contracted with BosGen for that specific role, was empowered and required to confirm documentation from shareholders who sought to tender their stock, and then made payments to the tendering shareholders, similar to Computershare in *Tribune II* and Wells Fargo in *Nine West*. *Id.* at *9.  In none of these cases did the Second Circuit or any other court suggest that sending a wire alone was sufficient to create the requisite agency in connection with the at-issue securities contract and qualify the customer as a financial institution. Indeed, if that was sufficient, the bulk of the analysis in *Tribune II*, *Nine West*, and *Boston Generating* would have been entirely unnecessary.

Pursuant to *Tribune II*, *Nine West*, and *Boston Generating* cases, Judge Drain put Defendants on notice of the evidence that they needed to come forward with to survive summary

judgment on this issue—a similar "paying agent or custodial agreement" regarding a securities

contract as found in *Tribune II*, *Nine West*, and *Boston Generating*.  Dkt. 87 at 62.  After three

years of discovery, Defendants have not done so.

In a particularly farfetched attempt to show evidence of an agency relationship, Defendants

point to simple bank accounts and wire transfers initiated by Tops.  This is an extreme proposition

that is completely divorced from the required scope of the agency and would render nearly every

entity a "financial institution."  To the contrary, the statutory definition requires the bank to be

acting as agent or custodian for a customer in connection with a securities contract.   Thus no law

supports Defendants' position.

Simple commercial banking wire transfers are governed by a creditor-debtor, not agency,

relationship.  New York courts have uniformly held that "[t]he relation of debtor and creditor, not

of agent and principal, exists between a bank and its depositor." *Baldwin's Bank of Penn Yan v.*

*Smith*, 215 N.Y. 76, 82 (1915); *see also Kings Premium Service Corp. v. Manufacturer's Hanover*

*Trust Co.*, 496 N.Y.S.2d 524 (2d Dep't. 1985) ("As a general rule, the relation between a bank and

its depositor is that of debtor and creditor, not of agent and principal.") (internal quotations and

citations omitted).  Even more, the ministerial task of processing a wire does not give rise to an

agency in connection with a securities contract.  *Nine West*, 87 F.4th at 149 (refusing to expand

Section 546(e) and "immunize transactions in which a bank took only purely ministerial action").

Since *Merit Management*, no court has adopted the proposition that the use of a simple

bank account to send or receive a wire results in an agency "in connection with a securities

contract" under Section 101(22)(A).  Defendants' position puts them at odds with both the majority

and the dissent in *Nine West*, as well as the plain text of the statute.  "Congress chose to pair 'is

acting as agent' with 'in connection with a securities contract,' thereby limiting a customer's

19

'financial-institution' status to when its agent is acting in precisely that capacity." *Nine West*, 87

F.4th at 153 (Sullivan, J., dissenting).  At base, Defendants' argument would delete the "capacity"

right out of the statute and allow *any* relationship at all to satisfy the test.  But, clearly, the scope

of the agency must be "in connection with a securities contract." *In re IIG Glob. Trade Fin. Fund*

*Ltd.*, 2024 Bankr. LEXIS 2728, at *39. That is why no court has adopted the extreme position that

Defendants espouse here: that the scope of agency can be satisfied by a wire from an ordinary bank

account unrelated to the applicable securities contract.

   *a.  Tops was not a financial institution*

Defendants claim that Tops' relationship with Bank of America qualified Tops as a

customer and Bank of America as an agent for the Notes Offering, which are the only securities

contracts identified by Defendants.  This is demonstrably false, per the explicit terms of the

governing contract, which predate the Note Offerings by years and did not mention the Notes

Offerings at all: ███████████████████████████████████████████

████████████████████████████████████████████████████████

███████  SOMF ¶ 28.  This unambiguous contractual language is dispositive and precludes

any genuine dispute of material fact on this issue because, having contractually disclaimed any

fiduciary duty, Bank of America cannot be an agent as a matter of law. *See AmTrust N. Am., Inc.*

*v. Safebuilt Ins. Servs.*, 2015 U.S. Dist. LEXIS 162515, at *23–24 (S.D.N.Y. Dec. 1, 2015) ("It is,

of course, well settled that an agent owes a fiduciary duty to its principal.").

Furthermore, there is no evidence that Tops assented, Bank of America accepted, or Bank

of America took any action as an agent for Tops related to the Notes Offerings when ministerially

executing the wire transfer. And other evidence confirms that Bank of America was not an agent

of Tops for that purpose.  The funds flow memorandum establishes that it was Tops, not Bank of

America, that acted to initiate the wire transfer. *See, e.g.,* SOMF ¶ 13 at Ex. 14, p. 3 ████████

████████████████████████████████████████████

███████████████████████ (emphasis added)); Ex. 24, Ex. 25, Ex. 26, Ex. 27. During the

deposition of Bank of America's corporate representative, Jan Schipper, Defendants failed to elicit

any testimony about an agency relationship, much less an agency relationship attendant to the

Notes Offerings or Dividends. SOMF ¶ 29, Ex. 23 (J. Schipper Dep. at 151:14–20; *see also id.* at

157:13–17). Thus, Defendants cannot raise any genuine dispute of material fact to show that Bank

of America was acting as agent for Tops in connection with the Notes Offerings when executing

the wire transfers. As a result, Tops was not a "financial institution" within the statutory definition.

> *b.  Defendants were not financial institutions.*

Defendants' citations to their own banks and bank agreements fare no better. There is zero

evidence that MS Cap V or HSBC were parties or participants to any securities contract for which

they would need an agent to act for them. There is zero evidence that either Citibank or

HSBC Bank even knew about the Notes Offerings when passively receiving the Dividend wires

in Defendants' bank accounts. There is zero evidence that the banks were "acting" at all. The

funds were transferred by Tops into MS Cap V's and HSBC's bank accounts, but there is no

evidence the banks had to act to receive the money—it was passive (or at most ministerial). *See,*

*e.g.,* SOMF ¶ 13 at Ex. 14, p. 3. There is zero evidence that either Morgan Stanley assented,

Citibank or HSBC accepted, or Citibank or HSBC Bank took any act for MS Cap V or HSBC as

agent in connection with the Notes Offerings.

The bank agreements cited by Defendants do not show the necessary elements and

affirmatively show that the banks were in fact not "agents in connection with a securities contract."

MS Cap V points to bank account statements showing its receipt of the transfers, but these

documents show only a wire being deposited into MS Cap V's accounts exactly like a typical bank-depositor transaction.  SOMF ¶ 32.  MS Cap V can point to nothing in the agreement that shows that Citibank accepted a role in connection with the Notes Offerings. The generic bank contract did not reference any securities contract, let alone the Notes Offerings.  MS Cap V did not depose Citibank.  It has no evidence supporting its theory.

In fact, MS Cap V's agreement with Citibank actually ███████████████████

████████████████████████████████████████████████████████████

██████████████████████████████    SOMF ¶¶ 30, 31, Ex. 24 at CITI_000009 (emphasis added).  MS Cap V claims that that phrase "securities business of MS Cap V refers to some other securities business[,]" but there is zero evidence of that—it is hollow attorney argument, not record evidence giving rise to a genuine dispute of material fact.  The predicate for the application of Section 546(e) through the definition of "financial institution" in Section 101(22)(A) is that MS Cap V needed to act in connection with a securities contract and retained Citibank to act as its agent for that purpose, but Citibank clearly disclaimed its role with regard to securities transactions.

For its part, HSBC failed to respond to the Trustee's interrogatory seeking evidence and contentions related to its Section 546(e) Defense, so it has waived the defense and should be precluded from presenting any factual issues at this stage.  *See* Section III(A), *infra*.  Regardless, it also cannot do so.  HSBC argues that its Investor Services Agreement ("ISA") with HSBC Bank creates a relevant agency relationship.  This argument fails.  HSBC can point to nothing in the agreement that shows that HSBC assented or HSBC Bank accepted a role in connection with the Notes Offerings or took any acts in connection with the Notes Offerings.  And, the relationship defined and governed by the ISA had nothing to do with the Dividends: ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████); Ex. 28.  It has nothing to do with the receipt of the Dividends, let alone the

Notes Offerings.  The only thing proved by the ISA is that HSBC knew how to establish an agency

relationship, but did not do so for the Notes Offerings.  SOMF ¶ 33.  It is absurd to claim that a

recipient of a transfer could activate the Section 546(e) Defense through post-transfer investment

activity unrelated to the challenged transfer.  Indeed, *Merit Management* instructs that those

activities are irrelevant, and *Nine West* precludes the argument that an agency related to a separate

contract controls the relevant relationship with respect to the Dividends.  The fact that HSBC feels

the need to point to a post-transfer sweep agreement telegraphs the weakness of its position on the

material evidence.

Thus, there is no genuine dispute of material fact that Citibank and HSBC Bank were not

acting as agents for MS Cap V and HSBC, respectively, in connection with the securities contracts

at issue—the Notes Offerings.  As a result, neither MS Cap V nor HSBC was a "financial

institution" within the statutory definition.  Accordingly, Defendants cannot show a genuine

dispute of material fact that the Dividends were not made by or to a qualifying financial institution

as required to invoke the 546(e) safe harbor, and summary judgment is accordingly warranted as

to their Section 546(e) Defense as a matter of law on this basis alone.

### iii.   The Dividends Were Not Transferred "In Connection With A Securities Contract"

Defendants also cannot meet the second, independent requirement for their Section 546(e)

Defense: the Dividends were not transferred "in connection with a securities contract."  This

language is often construed broadly, but it "is not boundless," *Jackson v. Mishkin (In re Adler,*

*Coleman Clearing Corp.)*, 263 B.R. 406, 478 (S.D.N.Y. 2001), and there is no way to square Defendants' boundless interpretation of the "in connection with" element of the Section 546(e) Defense with the Supreme Court's dictate that the challenged transfer ***itself*** must satisfy the statutory terms. *Merit Mgmt.*, 583 U.S. at 380–81 ("[T]o qualify for protection under the securities safe harbor, § 546(e) provides that the otherwise avoidable transfer itself be a transfer that meets the safe harbor criteria."). In direct contravention of this dictate, Defendants previously argued and are likely to argue again that the Dividends were integrated with the Notes Offerings because a transfer of money is automatically in connection with a securities contract when the money was funded or anticipated by a securities offering.

As noted above, Judge Drain rejected this argument and found that the "in connection with" element was not met because here, the Trustee seeks "to avoid the dividends, not the notes offerings." Dkt. 87 at 64. As Judge Drain held, the intent to use proceeds of a securities contract and the listing of a potential use of proceeds in a Notes offering do not render any such transfer from Tops' accounts "in connection with" the Notes offerings. *Id.* at 62. Defendants have produced no materially different evidence than existed at the time of Judge Drain's decision denying the applicability of the Section 546(e) Defense. SOMF ¶¶ 1–3, 12–14, 17–20. There is no limiting principle to Defendants' argument, which would result in absurd outcomes.

### 1. *Pure Dividends Are Not Protected by Section 546(e)*

Pure dividends are not protected by Section 546(e) because they are not transfers in connection with a securities contract. *See In re Glob. Crossing, Ltd.*, 385 BR 52, 57 n.1 (Bankr. S.D.N.Y. 2008); *Hurwitz*, 2024 WL 5114996; *Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 198 B.R. 352, 360 (Bankr. D. Colo. 1996), *aff'd*, 354 F.3d 1246 (10th Cir. 2004). Every court to consider a stand-alone gratuitous dividend under Section 546(e) has concluded the defense is not applicable because the dividends were not in connection with a

securities contract.   In *Global Crossing*, the Southern District of New York Bankruptcy Court considered a dividend payment to various brokerage houses and banking institutions.  385 BR at 56.   Dreyfus, a defendant in *Global Crossing*, argued that because the dividend was made to holders of the "four issues of preferred stock" and "paid on account as required by the terms of the preferred stock issuance by the Debtor[,]" it was a settlement payment made in connection with a securities transaction.  *Glob. Crossing*, No. 04-cv-01731, Doc. 50, 3 (Bankr. S.D.N.Y. Aug. 5, 2005); *id.*, Doc. 152, 2 (Bankr. S.D.N.Y. Dec. 30, 2005).   The Court rejected the defendant's argument and held that the distribution was a pure dividend and, as such, was not safe harbored.  *Glob. Crossing*, 385 B.R. at 56 n.1.   The Court noted that "later amendments to the Code … broadened that definition and Section 546(e)'s safe harbor, [and] they conspicuously failed to provide in either place for an exemption for the payment of dividends."  *Id.*  Thus, "[t]he issuance of a dividend on stock previously purchased is not a payment for the purchase, sale or loan of securities."  *Id.*  That conclusion is on all fours with the dividends here, which were payments on previously purchased shares.

More recently, in *Hurwitz*, Bankruptcy Judge Wiles held that pure dividends were likewise not transfers in connection with a securities contract.  *Hurwitz*, 2024 WL 5114996, at *19.   In *Hurwitz*, the trustee asserted claims for fraudulent transfer from GBG to GBGH and to Fung Holdings that were paid after the close of a sale transaction (the "Centric sale") and certain debt refinancings.  *Id.* at *4–5.  The defendants claimed "that the Centric sale included a sale of securities, that the amount of the GBGH dividend was conceived by reference to the expected proceeds of the Centric sale, and that as a result all of the March 2019 dividend transfers by GBG to GBGH were made 'in connection with' a securities transaction."  *Id.* at *19. Judge Wiles applied the framework recognized by *Merit Management* to focus the analysis on the transfers that the

trustee sought to avoid—the dividends—not the prior Centric sale, holding that "the Trustee does not challenge the Centric sale and does not seek to avoid it." *Id.* at 22. Accordingly, Section 546(e) did not apply because "[t]he transfers that GBG made to GBGH and to Fung Holdings plainly were not securities transactions." *Id.*

Other cases confirm this conclusion. For example, the dividend challenged in *Integra Realty* was an exchange of common stock "without the receipt of any money or any change in what was owned." 198 B.R. at 360. The court concluded that the stock exchange was effectively a distribution, and therefore not protected by Section 546(e). *Id.*

No court disagrees. Defendants have pointed to no case holding that a pure dividend is safe harbored. As discussed below, each of the cases Defendants have cited arose in the context of completing or effectuating a securities transaction—typically an LBO—that altered the ownership structure of the respective company. Pure dividends like those that were distributed here are not safe harbored under the plain terms of Section 546(e) and existing case law.

### 2. The Dividends Were Not Integrated Into The Prior Notes Offerings

In an attempt to raise a genuine dispute of material fact, Defendants claim that the Dividends were integrated with the Notes Offerings. Defendants' position flies in the face of *Merit Management*: the Dividends were transfers from Tops, which cannot be "integrated with" transfers to Tops (which the trustee could not avoid) to expand the application of Section 546(e) beyond the transfer "that the trustee seeks to avoid pursuant to its substantive avoiding powers." *Merit Mgmt.*, 586 U.S. at 386.

This principle was recognized by courts almost immediately after the *Merit Management* opinion, is the law of the case, and is binding to this day. For example, in *In re Greektown*, 621 B.R. 797 (Bankr. E.D. Mich. 2020), the defendants made the same argument that certain transfers

were safe-harbored because they were not standalone transfers, but instead only one element of an integrated transaction. On remand, after the Supreme Court issued its opinion in *Merit Management*, the *Greektown* court rejected the "step transaction doctrine" that provided that interrelated yet formally distinct steps in an integrated transaction may not be parsed to bring an otherwise avoidable transfer into the scope of Section 546(e). *Id.* at 808, 819–21.

In fact, Bankruptcy Judge Wiles in *IIG Global* recently refused to apply the safe harbor along similar lines. As Judge Wiles held in reviewing *Merit Management*:

> The Supreme Court explained that it is not enough that a transfer "involves" a securities transaction or a securities contract, or that it "comprises" part of a securities transaction or contract. Instead, in order "to qualify for protection under the securities safe harbor, §546(e) provides that the otherwise avoidable transfer itself be a transfer that meets the safe-harbor criteria."

*In re IIG Glob. Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728, at *73.[10] "*Merit Management* quite clearly commands that in deciding whether section 546(e) applies I should look at the transfer that the plaintiff seeks to avoid and whether that transfer 'itself' was a payment to a protected entity of a kind that invoked the protections of section 546(e)." *Id.* at *46. As in *IIG Global*, Defendants here are "urging [the Court] to do the opposite[,]" admitting "that the alleged transfers [the Dividends] would not be subject to section 546(e)," yet asking the Court for permission to "re-define the transactions in order to try to bring them within the scope of section 546(e)." *Id.* But as Judge Wiles aptly stated: "That is exactly what the Supreme Court said in *Merit Management* that I should not do." *Id.*; *accord Hurwitz*, 2024 WL 5114996 (holding that

---

[10] In the short amount of time since the *Boston Generating* Summary Order was issued, the strategy employed by Defendants with respect thereto has already been rejected. For example, the *IIG Global* court noted that while "[p]rior decisions in this Circuit have given a broad interpretation to the words 'in connection with[,]'" none of the post-*Merit Management* decisions that have followed pre-*Merit Management* precedent (including *Boston Generating* and the Summary Order), have reconciled their holdings with the Supreme Court's binding precedent. 2024 Bankr. LEXIS 2728, at *72. Judge Wiles observed that "[t]he gist of the Defendants' argument is that a transfer is made 'in connection with' a securities transaction so long as it is 'related to' a separate securities transaction or if it is 'prompted by' a separate securities transaction, even if the challenged transfer itself is not a securities transaction," which cannot be "squared" with *Merit Management*. *Id.*

defendants "want to re-define the relevant transactions to try to bring section 546(e) into play, but that is exactly what the Supreme Court said in *Merit Management* that I should not do"). Thus, Defendants' argument has already been thoroughly analyzed and rejected by this Court many times over. Dkt. 87 at 63–69; *see also, generally*, *In re IIG Glob. Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728; *Hurwitz*, 2024 WL 5114996; *accord Greektown*, 621 B.R. 797. For the same reasons, it should be rejected here.

The undisputed facts bear this out. The Dividends were paid ***after*** the ***close*** of the Notes offerings. SOMF ¶¶ 3, 14, 19. The funds flow memoranda for 2009 and 2012 show that the Notes offering closed prior to the payment of the Dividends. SOMF ¶¶ 3, 14. The funds flow memorandum for 2013 provides that the "**Notes offering is now closed**" without reference to any subsequent dividends. SOMF ¶ 19. The Dividends were not integrated into the Notes offerings, just as Judge Drain held.

### 3.   *The Intended Use of Proceeds Are Legally Irrelevant*

The fact that the proceeds of the Notes Offerings funded the Dividends does not give rise to a genuine dispute of *material* fact because the contemplated use of proceeds is legally immaterial. *IIG Glob. Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728, at *62 ("I also disagree with the Defendants' argument about the legal significance of the 'purposes' that allegedly motivated the transactions that are being challenged."); *Hurwitz*, 2024 WL 5114996, at *21–22 (rejecting defendants' attempt to connect the anticipated use of the proceeds of a securities transaction to avoidable dividend).

In addition to Judge Drain's opinion, the courts in *Greektown*, *IIG Global*, and *Hurwitz* rejected the contention that Section 546(e) applies "merely because one or more of the parties contemplated that a separate securities transaction would occur either in advance of, or after, the transfer that was challenged." *In re IIG Glob. Trade Fin. Fund Ltd.*, 2024 Bankr. LEXIS 2728, at

*57; *see also In re Crown Vantage, Inc.*, No. C-02-3838 MMC, 2006 WL 2348850, at *5 (N.D. Cal. Aug. 11, 2006) (refusing to apply the Section 546(e) safe harbor where "[t]he 'settlement' of each such transaction, however, was complete, at the latest, when Crown received payment from the issuing underwriters, and thus was complete before the transfer at issue herein between Crown and Fort James."), *adopted by In re Enron Creditors Recovery Corp.*, 422 B.R. 423, 442 (S.D.N.Y. 2009), *aff'd sub nom. Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011) ("This meant that the transfer sought to be avoided—the transfer to Fort James, which occurred after the underwriting was complete—was not a payment made to 'settle' (conclude) a 'securities transaction.'").

Defendants' position would also lead to absurd results. Parties entering into a securities transaction always intend to use the funds for *some* purpose. That stated or intended purpose does not render every subsequent transfer pursuant to that purpose "in connection with the securities contract" under Section 546(e). For example, a common "use of proceeds" provision states that the proceeds of a securities contract would be used for "general commercial purposes." *See, e.g.*, *Hurwitz*, 2024 WL 5114996, at *3 (noting intended use of proceeds of securities transaction as, inter alia, "general working capital purposes"). According to Defendants' theory, in those situations, any transfer of the proceeds for any general commercial purpose at all—repayment of antecedent debts, purchase of supplies that ended up worthless, bonus payments—would be "integrated" into the prior securities contract and shielded under Section 546(e) as "in connection with" the securities contract. But, regardless of the contemplated use of the funds, those are simply not transactions in connection with a securities contract that are, or should be, protected by Section 546(e).[11]

---

[11] Consider an issuance of securities that lists as the use of proceeds as "general and corporate purposes" and "repayment of prior debt." The company receives $10 million from the securities and uses $6 million to repay an

Quite simply, the use of proceeds from the Notes Offerings (like the use of any other funds) does not render the Dividends (or any other intended use of the proceeds) "in connection with" the Notes Offering.

### 4. *Defendants Try to Turn the Second Circuit's LBO Decisions on Their Head*

Because Judge Drain ruled that the Dividends were not in connection with the Notes Offerings under Section 546(e) and there are no new material facts from those considered by Judge Drain, Defendants will try to turn to the recent *Boston Generating* Summary Order from the Second Circuit to try to escape the law of the case. Defendants' reliance on *Boston Generating*, however, is misplaced because it affirmed the district court's opinion and did not change the law, and its affirmance supports Judge Drain's opinion and the inapplicability of the Section 546(e) Defense to this case. Like all the other LBO cases to consider the issue, the *Boston Generating* court concluded that a transfer that contractually effectuates a subsequent securities contract was "in connection with" that securities contract. That is unsurprising and irrelevant to this case.

Contrary to Defendants' position, *Boston Generating* shows exactly why the Dividends here are not "in connection with" the Notes Offerings. *Boston Generating* considered the Section 546(e) safe harbor in connection with a two-step leveraged buyout (the "Leveraged Recap Transaction")[12] resulting in a share redemption and payments under a tender offer (the "Tender Offer"), which was undisputedly a securities contract. The Trustee sought to recoup the transfers to the members by avoiding the initial transfer from BosGen to its parent EBG. The Second Circuit

---

antecedent debt and $4 million to buy commercial diamonds that turned out to be worthless clear plastic. The company goes bankrupt 1 month later. According to Defendants, the $6 million debt repayment would not be avoidable as a preference under section 547 because it was in connection with a securities contract, even though an entirely separate pre-existing debt instrument governed the repayment, and the transfer for worthless "diamonds" would likewise not be avoidable as a fraudulent transfer because the source of funds was the securities contracts. Case after case disproves this theory, including the recent *IIG Global* case from this bankruptcy court, which is discussed herein.

[12] "The Leveraged Recap Transaction included a $925 million tender offer (the "Tender Offer") and a $35 million dividend distribution (the "Dividend")." 2024 U.S. App. LEXIS 23800, at *5.

rejected that formulation and held that the challenged transfer was safe harbored because it was made to effectuate the repurchase of shares pursuant to the Tender Offer. BosGen "was party to the contract," "the Tender Offer was effectuated pursuant to that contract as written," and "BosGen provided funds specifically for the purpose of making payments to EBG members tendering their units in connection with that contract." 2024 U.S. App. LEXIS 23800, at *8. As Judge Wiles recently held in *IIG Global*, the Second Circuit's ruling in *Boston Generating* was based on particular facts showing that the transfers in that case were merely "intermediate movements of funds" made pursuant to the governing Tender Offer. 2024 Bankr. LEXIS 2728, at *49–50; *Hurwitz*, 2024 WL 5114996, at *21 ("[T]he transfers are issue were themselves transfers that were made to complete a securities transaction"). As Judge Drain recognized, this is nothing like the transfers at issue here, where the relevant transfers are straightforward Dividend payments and were not necessary for or transferred to effectuate the prior Notes Offerings.[13] There is simply nothing comparable to the Tender Offer in this case. Thus, *Boston Generating*, like all of the other LBO case law considered by Judge Drain, is inapplicable and did not change any controlling law.

### iv. The Consequences of Defendants' Proposed Course of Action Would be Dramatic and Obviate Congressional Intent

Defendants' last ditch attempt to render Section 546(e) vastly applicable goes far beyond what the Supreme Court and Second Circuit have allowed and the consequences of such a ruling would be dramatic. Defendants ask the Court to reject the balance Congress enacted with Section 546(e) and the definition of "financial institution" in Section 101(22)(A). Defendants'

---

[13] As recognized by Judge Drain, and as found by the bankruptcy and district courts in *Boston Generating*, unlike the Dividends here, the distribution on *Boston Generating* was "not an isolated dividend paid in the ordinary course" but instead paid "'*prior* to the purchase of Units in the Offer'" to "'return value to Members ... consistent with the Recapitalization and [to] enhance the benefits of the Recapitalization.'" *In re: Boston Generating LLC*, 617 B.R. 442, 493 (Bankr. S.D.N.Y. 2020) (emphasis added); *see also Holliday v. Credit Suisse Sec. (USA) LLC (Boston Generating II)*, 2021 WL 4150523 at *7 (S.D.N.Y. Sept. 12, 2021) (holding that the Dividend was part of the Tender Offer and necessary to "'return value' to EBG's equity members and enhance benefits relating to tax liability and planning under the Recap Transaction").

interpretation would ignore that specific statutory definition and render the safe harbor applicable to virtually every transfer made in connection with a securities contract, since some party to almost every such transfer will use a bank account (unless, that is, people start carrying around bags containing hundreds of millions of dollars). And, as discussed above, Defendants' interpretation would rope in numerous transactions that fail to meet any reasonable definition of "in connection with" because securities transactions are undertaken for all sorts of later purposes that are not part of or in connection with the securities contract itself.

By effectively arguing that any sophisticated transfer is protected under the umbrella of Section 546(e), Defendants would gut the trustee's statutory obligations to recover fraudulent transfers, preference payments, and other rights for creditors in all but a few narrow circumstances divorced from the realities of the marketplace and the statutory terms. This result would have dire consequences, and this case is a prime example. Here, as Judge Drain noted, "after encumbering a privately held company's assets with privately issued debt, a handful of sophisticated private equity investors took massive dividends that . . . left the pension plans of thousands of workers and hundreds of creditors holding the bag." Dkt. 87 at 72. Defendants' position, if accepted, would render them and others in their position unaccountable as a matter of law.

Defendants' position thus has no connection to the Congressional intent in enacting Section 546(e) of the Bankruptcy Code. The purpose of the provision was to prevent the insolvency of one commodity or securities firm or other financial institution from destroying the national system for trading publicly held securities. *See* Neil M. Garfinkel, <u>No Way Out: Section 546(e) Is No Escape for the Public Shareholder of a Failed LBO</u>, 1991 Colum. Bus. L. Rev. 51, 64–65 (1991); *see also* H.R. Rep. No. 109–648, at 1–2. In *Nine West*, the Second Circuit credited that Congressional intent in applying a narrow interpretation of the definition of "financial

institution" within the statute.  The court observed the criticisms of more expansive rulings and overturned the district court's ruling that Section 546(e) applied beyond the transfers that would actually implicate the securities market participants.  *Nine West*, 87 F.4th at 146 ("Interpreting the safe harbor as broadly as defendants suggest would limit the avoidance power even where it would not threaten the financial system — an expansion of the safe harbor provision likely not intended by Congress.").  Here, too, as Judge Drain found, "*[t]he avoidance of these dividends and the loans that funded them would have <u>no</u> effect on the public securities markets, the ostensible purpose for section 546(e)*."  Dkt. 87 at 72 (emphasis in original).

The avoidance of unlawful Dividends to private equity owners made to the detriment of the creditors of a privately held grocery chain has nothing to do with the goal of protecting the securities marketplace, and it would be ridiculous to override the established avoidance powers that have been fundamental to the core principles of bankruptcy dating back over 400 years on that premise.  *See Merit Mgmt.*, 583 U.S. 366 (refusing to displace the long pedigree of fraudulent transfer actions); *Glob. Crossing Estate Representative v. Alta Partners Holdings LDC (In re Glob. Crossing, Ltd.)*, 385 B.R. 52, 56 n.1 (Bankr. S.D.N.Y. 2008) ("Recovery of an improper dividend from the ultimate recipient—as contrasted to a clearing agent or broker that might have been a conduit or counterparty to dealings with others in the securities industry—raises no risks to the stability of the securities markets."); *Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*, 450 B.R. 414, 425 (Bankr. S.D.N.Y. 2011) ("[I]t is relatively easy to conclude that Congress never could have meant to permit Section 546(e) to protect transactions that themselves were assaults on the securities markets, as that would be a perversion of the statute's purpose.").  Thus, this case should not serve as a vehicle for an over-expansive application of Section 546(e).

For the reasons set forth above, the Court should grant summary judgment in favor of the Trustee as to Defendants' Section 546(e) Defense.

## II.    Summary Judgment is Warranted for Defendants' Statute of Limitations Defense

The court should also grant summary judgment dismissing Defendants' statute of limitations defense.[14]  There is no legally viable limitations defense for the fraudulent transfer claims under (a) NY DCL §§ 274276, which do not require the plaintiff to be a creditor at the time of the transfer, or (b) NY DCL § 273 for the 2012 and 2013 Dividends,[15] which are within the New York six–year limitation period.  Dkt. 87 at 20–21.  Because Defendants' Statute of Limitations Defense is pled generally, and because it is uncontested that it does not apply to those claims, Defendants should either voluntarily drop, or the Court should grant summary judgment as to, the Statute of Limitations Defense to those claims.

Defendants maintain their Statute of Limitations Defense for claims under Section 273 for the 2009 and 2010 Dividends.  This defense fails as well, as the IRS is a triggering creditor, and each of the Dividends is within the statutory ten–year limitation period applicable to the IRS.

### A.    Burden of Proof

"The statute of limitations is an affirmative defense on which the defendant bears the burden of proof."  *Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*, No. 09 Civ. 9802(RJS), 2010 WL 1838730, at *2 (S.D.N.Y. May 4, 2010); *Genger v. Genger (In re Genger)*, Nos. 19-13895-JLG, 20-01010-jlg, 2021 Bankr. LEXIS 2190, at *51 (Bankr. S.D.N.Y. Aug. 12, 2021).

---

[14] *See* Dkt. 141, ¶ 321; Dkt. 142, ¶ 321; Dkt. 145, ¶ 321; Dkt. 144, ¶ 321; Dkt. 143, ¶ 321; Dkt. 140 (Third Affirmative Defense); Dkt. 139 (Third Affirmative Defense); Dkt. 128 (Second Defense); Dkt. 129 (Second Affirmative Defense); Dkt. 130 (Second Affirmative Defense).

[15] *See* MS Defs.' Resp. to Trustee's Pre-Mot. Ltr. (Dkt. 208) at 4; HSBC Defs.' Resp. to Trustee's Pre-Mot. Ltr. (Dkt. 210) at 2-3.

### B.    Applicable Law

Claims under Section 544(b) are subject to the applicable limitations period that would apply to the triggering creditor's claims outside of bankruptcy. Under New York law, a six–year limitation applies to fraudulent transfer claims. N.Y. C.P.L.R. § 213(8). In addition, the IRS is subject to its own, specific limitations periods under the *nullum tempus* doctrine and Section 6502 of the Internal Revenue Code. Dkt. 87 at 22–28. As Judge Drain held, and as discussed below, when the IRS is a triggering creditor, the limitations period is extended back more than ten years. Dkt. 87 at 21–24, 27–28. The plain statutory text of Section 544(b) and a nearly unbroken line of cases from across the country establish that the IRS is a triggering creditor. *Id*. at 22.[16] Defendants did not present any counter-argument in their pre-motion letter briefs or at the hearing, and the law is well established, as this Court has recognized. SOMF ¶ 34, Ex. 29 at 60:6–7 ("[T]here's such robust law that the IRS really is a legally-viable triggering creditor.").

### C.    Judge Drain's Order Disposes of the Limitations Defense.

Defendants previously moved to dismiss the Trustee's claims arising from the 2009 and 2010 Dividends based on the Statute of Limitations Defense, and their arguments were soundly rejected. There, Defendants argued before Judge Drain that New York's six–year limitations period barred the claims, and that the IRS was not a qualifying triggering creditor such that the

---

[16] *See, e.g., In re CVAH, Inc.*, 570 B.R. 816, 834 (Bankr. D. Idaho 2017) ("[A] clear majority of courts that have considered the question have held that when a bankruptcy trustee steps into the shoes of IRS under § 544(b)(1), the trustee is likewise immune to the time limits in state statutes, just as IRS would be."); *see also In re Maxus Energy Corp.*, 2022 Bankr. LEXIS 1748, at *116; *see also*, in addition to the several contrary decisions cited by *Vaughan*, 498 B.R. at 303, *Pereira v. Omansky (In re Omansky)*, 2022 Bankr. LEXIS 2535, at *28-29 (Bankr., S.D.N.Y. Sept. 15, 2022); *In re Smith*, 2022 Bankr. LEXIS 1533, at *16-17; *Gordon v. Webster (In re Webster)*, 629 B.R. 654, 674 (Bankr. N.D. Ga. 2021); *Mitchell v. Zagaroli (In re Zagaroli)*, 2020 Bankr. LEXIS 3111, at *4-9 (Bankr. W.D.N.C. Nov. 3, 2020); *Murphy v. ACAS, LLC (In re New Eng. Confectionary Co.)*, 2019 Bankr. LEXIS 2281, at *5-6 (Bankr. D. Mass. July 19, 2019); *Vieira v. Gaither (In re Gaither)*, 595 B.R. 201, 208-210 (Bankr. D.S.C. 2018); *Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.)*, 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006); *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004); R. Stephen McNeill, "Avoiding the Unavoidable: A Practitioner's Guide to Federal Governmental Creditor Fraudulent Conveyance Actions," 92 Am Bankr. L.J. 335, 346 (2018) ("[A]ny limitations on § 544(b) likely will need to be crafted by Congress, not the courts.").

ten–year statute of limitations could be imputed to the Trustee.  Through his extensive analysis,

which is the law of the case, Judge Drain rejected Defendants' position.  *See* Dkt. 87 at 19–28.  He

first observed that a triggering creditor at the time of the transfer was not required under NY DCL

§§ 274–276.  *Id.* at 20.  Then, in addressing Section 273, he relied on the statutory text of

Section 544(b) and the vast weight of authority to conclude that the IRS qualifies as a triggering

creditor.  *Id*. at 23.  He held that, "if the IRS qualifies as a triggering creditor under § 544(b), the

Trust has standing to seek to avoid the 2009 and 2010 dividends under NY DCL § 273 as

incorporated by that section of the Bankruptcy Code."  *Id*. at 23, 23 n.105 (citing cases).  Judge

Drain reached that conclusion by reference to the proofs of claim filed in the bankruptcy, which

Defendants had not contested.  *Id.* at 22 n.101.

Judge Drain rejected Defendants' argument that the claims would still be time barred

because the IRS purportedly did not issue an assessment prior to the 2009 or 2010 Dividends such

that its ten–year limitations period would be triggered.  *Id.* at 23.  To this, Judge Drain ruled that

the argument "misconstrues the statue and the case law applying the *nullum tempus* doctrine."  *Id.*

He concluded that "'the IRS's status as a creditor of the debtor is not dependent on the assessment

of the tax' at all," and "it is the IRS's status as a creditor in connection with the transfer that triggers

its right to avoid the transfer."  *Id.* at 26.

Defendants also sought interlocutory review of that ruling, and were denied.  Judge Román

rejected the request for appellate review, holding that "[t]his is a pure question of law, but not one

as to which exists a substantial ground for a difference of opinion."  *Halperin v. Morgan Stanley

Inv. Mgmt. Inc. (In re Tops Holding II Corp.)*, No. 22-Civ-9450 (NSR), 2023 U.S. Dist. LEXIS

2749, at *10 (S.D.N.Y. Jan. 6, 2023).  Judge Román agreed with Judge Drain that

"section 544(b)(1) would need to be amended by adding to its final clause 'provided, that only the

state law limitations period shall apply' for PE Defendants to prevail on their argument." *Id.* at

n.6.   Judge Román continued: "As both Judge Drain and Judge Beckerman reasoned, policy

arguments do not enable a court to read into Section 544(b) a state law limitations bar that is plainly

absent." *Id.* at *10 (citing *Pereira v. Omansky (In re Omansky)*, Nos. 18-13809 (LGB), 20-01091

(Beckerman), 2022 Bankr. LEXIS 2535, at *27 (Bankr. S.D.N.Y. Sep. 15, 2022)).[17]

As such, it is the law of the case that the IRS is a triggering creditor, the limitation period

applicable to the IRS applies, and the Section 273 claims for the 2009 and 2010 Dividends are not

time barred. Defendants have not and cannot offer any requisite intervening case law or evidence

to justify sidestepping the law of the case, as there has been no intervening case law on this issue,

and Defendants have developed zero evidence supporting their limitation defense.   Moreover, in

pre-motion letters, Defendants did not even seek re-litigation of that ruling.

Even if Judge Drain's above ruling was not law of the case (which it is), Defendants'

Statute of Limitations Defense regarding the 2009 and 2010 Dividends under Section 273

unequivocally fails because the IRS is a qualifying creditor into whose shoes the Trustee may step

to utilize the applicable ten–year limitation period.   As Judge Román held, this is not an issue "as

to which exists a substantial ground for a difference of opinion." *Halperin*, 2023 U.S. Dist. LEXIS

2749, at *10; *see also, e.g.*, *In re CVAH, Inc.*, 570 B.R. 816, 834 (Bankr. D. Idaho 2017) ("[A]

clear majority of courts that have considered the question have held that when a bankruptcy trustee

steps into the shoes of IRS under § 544(b)(1), the trustee is likewise immune to the time limits in

state statutes, just as IRS would be.").   The factual record shows that the IRS was a creditor of

Tops at the time of the 2009 and 2010 Dividends and at the time of the bankruptcy.  SOMF ¶ 41.

---

[17] This is consistent with Your Honor's discussion at the Pre-Motion Conference.  SOMF 34, Ex. 29 at 63:14-17 ("I'll volunteer that I have some policy issues with that, but I think Congress has done it and I think the courts are running about 30 to 1 now with one having been 31 cases ago.").

The IRS was a creditor from the moment Tops owed taxes, which it did every year, as shown in its financial statements. *See* SOMF ¶ 41, Ex. 31 at 13; 21; 29; 31–32; Ex. 32 at 15–16. That ends the inquiry because no specific assessment was required before the 2009 and 2010 Dividends.

> ### D. Defendants' Late Pivot is Still Subject to the Law of the Case and is Unfounded

In light of the evidence, the overwhelming case law undermining their position, and Judge Drain's ruling on their motion to dismiss, Defendants in their pre-motion letters abandon the bulk of their arguments regarding the statute of limitations in favor of the position that the IRS is not a triggering creditor because, though the IRS filed timely proofs of claim against Tops Holding II Corporation, Tops Markets, LLC, Tops PT, LLC, and Erie Logistics LLC, there is no evidence that the IRS filed a timely proof of claim against Tops Holding Corporation (n/k/a Tops Holding LLC). *See* Morgan Stanley Defendants' Response to Trustee's Pre-Motion Conference Letter at 4. Defendants' argument is legally and factually incorrect, as set out below.

In 2013, Tops reorganized for tax purposes under Section 368(a)(1)(F) of the Internal Revenue Code. Pursuant to that reorganization, Tops Holding LLC was made a "disregarded entity" for tax purposes and became a direct subsidiary of Tops Holding II Corporation. SOMF ¶ 36. A Section 368(a)(1)(F) "reorganization presumes that the surviving corporation is the same corporation as the predecessor in every respect, except for minor or technical differences." *TBL Licensing LLC v. Comm'r*, 158 T.C. 1, 10 (2022), *aff'd*, 82 F.4th 12 (1st Cir. 2023). This was a mere change of corporate vehicles, leaving the transferee, Tops Holding II Corporation, "no more than the alter ego of the transferor." *Pridemark, Inc. v. Commissioner*, 345 F.2d 35, 42 (4th Cir. 1965); *see also TBL Licensing*, 158 T.C. at 40 ("[T]he identity between the old and new corporations may be so strong as to allow treating the two as a single corporation.").

This type of nominal reorganization is exactly what Tops effectuated. Pursuant to that reorganization, Tops Holding LLC became a direct subsidiary of Tops Holding II Corporation and was made a disregarded entity for tax purposes. Per Tops Holding II Corporation's 2013 IRS Tax Form 8453-C (emphasis added):

> The shareholders intend to treat Tops Holding LLC as a "disregarded entity" for U.S. Federal income tax purposes in accordance with Treas. Reg.§§ 301.7701-2 and 301.7701-3.

> This transaction is intended to qualify as a tax-free reorganization of Tops Holding Corporation into Tops Holding II Corporation pursuant to IRC § 368(a)(l)(F). Pursuant to Treas. Reg. § l.1502-75(d)(2), **the common parent corporation <u>shall remain as</u> the common parent irrespective of a mere change in the identity, form or place of organization of such common parent corporation**.

Thus, there is no genuine dispute of material fact that Tops Holding II Corporation stepped into Tops Holding Corporation's shoes for tax purposes.

Federal law provides the procedure for collecting tax liabilities from a transferee under a Section 368(a) reorganization. Under 26 U.S.C. § 6901, the IRS can assess tax liability against a taxpayer who is "the transferee of assets of a taxpayer who owes income tax." *Salus Mundi Found. v. Comm'r*, 776 F.3d 1010, 1017 (9th Cir. 2014). Under federal law, a "transferee" includes reorganized entities under Section 368(a)(1)(F). 26 U.S.C. § 6901(h). Further, Section 6901(a)(2) expressly allows for the collection from a reorganized entity (*i.e.*, Tops Holding II Corporation) under Section 368(a):

> The liability, at law or in equity of a transferee of property of any person liable in respect of any tax imposed by this title (other than a tax imposed by subtitle A or B), but only if such liability arises on the liquidation of a partnership or corporation, or *on a reorganization within the meaning of section 368(a)*.

Thus, after a Section 368(a) reorganization like the one conducted by Tops in 2013, the tax liabilities shall be "assessed, paid, and collected in the same manner and subject to the same

provisions and limitations as in the cases of taxes with respect to which the liabilities were incurred." 26 U.S.C. § 6901(a).[18]

In other words, the IRS could file a proof of claim only against Tops Holding II Corporation after the Section 368(a)(1)(F) reorganization, who stepped into the shoes of Tops Holding Corporation for tax purposes. As such, the IRS is a triggering creditor consistent with Judge Drain's rulings in this case, and the ten–year statute of limitation applies.

## III. Summary Judgment is Warranted for Defendants' Miscellaneous Asserted Defenses

### A. HSBC and the Outside Directors Are Estopped From Pursuing Their Miscellaneous Asserted Defenses

Although HSBC and the Outside Directors both asserted a number of Miscellaneous Asserted Defenses, they marshalled no evidence related to those defenses during discovery. At the close of discovery, without any factual support whatsoever for these defenses, HSBC and the Outside Directors refused to respond to Trustee's contention interrogatories that sought the factual bases for them. SOMF ¶¶ 46, Ex. 35, Ex. 36, Ex. 37. Given this failure, HSBC and the Outside Directors are estopped from pursuing them now, and these defenses should be dismissed. *See Dixon v. City of Syracuse*, No. 5:20-CV-381, 2024 WL 4227775, at *6 (N.D.N.Y. Sept. 18, 2024) (plaintiff abandoned all claims that he failed to identify in response to contention interrogatories).

Contention interrogatories are "designed to assist parties in narrowing and clarifying the disputed issues in advance of summary judgment practice or trial." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 117 F. Supp. 3d 276, 293–94 (S.D.N.Y. 2015); *see* Local Rule 33.3(c) (authorizing parties to serve interrogatories seeking claims and contentions of the opposing

---

[18] Treasury regulations further define the term "transferee" to include "the shareholder of a dissolved corporation." 26 C.F.R. § 301.6901–1(b).

party at least 30 days prior to the close of discovery).  For this reason, contention interrogatory responses are "treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers," unless the responding party can demonstrate "the failure was substantially justified or is harmless."  *In re MTBE Prods. Liab. Litig.*, 117 F. Supp. 3d at 294.  The rule does not require initial proof of prejudice as a prerequisite to preclusion, *id.*, as "[t]he estoppel principles applied in the [Second] Circuit to contention interrogatory responses implicitly presume unfair prejudice will result if the responding party subsequently alters [its] position," *Wechsler v. Hunt Health Sys. Ltd.*, No. 94 Civ. 8294, 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999).

HSBC's and the Outside Directors' failure to respond to the Trustee's contention interrogatories concerning their Miscellaneous Asserted Defenses estops them from asserting the same.  As set forth in the Statement of Facts, on November 22, 2023, Plaintiff served contention interrogatories on all Defendants seeking the facts supporting and refuting each of their asserted affirmative defenses, including the affirmative defenses of (i) equitable estoppel, (ii) waiver/laches, (iii) unclean hands, (iv) setoff/recoupment, (v) good faith, (vi) double recovery, (vii) *in pari delicto*, (viii) res judicata, (ix) Bankruptcy Code § 502(h), (x) "non-debtor property," (xi) failure to mitigate,  (xii) ratification, and (xiii) "speculative damages."   SOMF ¶ 45.  HSBC and the Outside Directors did not respond to the interrogatories, stating that they were "premature, as discovery is ongoing." SOMF ¶ 46, Ex. 35, Ex. 36, Ex. 37.

Discovery closed on January 26, 2024, one month after Defendants served their responses to the contention interrogatories.  Dkt. 174.  At no point did HSBC or the Outside Directors supplement their responses to address any of their deficiencies, as required under the Federal Rules. *See Unigene  Lab'ys, Inc. v. Apotex, Inc.*, 2010 WL 2730471, at *6 (S.D.N.Y. July

7, 2010), *aff'd*, 655 F.3d 1352 (Fed. Cir. 2011) ("Defendants are bound by their contentions interrogatory answers, and are required to "supplement or correct [their] . . . response [to an interrogatory] … in a timely matter if the party learns that in some material respect the disclosure is incomplete or incorrect . . . .") (quoting Fed. R. Civ. P. 26(e)); *In re MTBE Prods. Liab. Litig.*, 117 F. Supp. 3d at 294 ("Failure to amend a contention interrogatory pursuant to Federal Rule of Civil Procedure 26(e) can bar use of a theory of liability, especially when such failure results in prejudice to the adverse party."). Accordingly, HSBC and the Outside Directors are now estopped from pursuing these defenses.

### B.    The Miscellaneous Asserted Defenses Are Unsupported by Any Evidence and/or Fail as a Matter of Law

Separately, to the extent they are not waived or barred, the Trustee is entitled to summary judgment on Defendants' Miscellaneous Asserted Defenses because they are unavailable as a matter of law, and/or there is no evidence to support any of them.

#### i.    *The Doctrines of Laches and Unclean Hands Cannot Bar Legal Claims*

Each of the Defendants asserted that the doctrines of laches and unclean hands bar the Trustee's claims. But black letter law prohibits the assertion of these defenses here, as both are *equitable* defenses that "do[] not apply to actions at law that seek money damages." *Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, 2021 WL 4173929, at *5 (S.D.N.Y. Sept. 14, 2021) (unclean hands); *Ogilvy Group Sweden, AB v. Tiger Telematics, Inc.*, 2006 WL 547785, at *2 (S.D.N.Y. Mar. 7, 2006) (laches); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014) (laches); *Balderramo v. Go New York Tours Inc.*, 668 F. Supp. 3d 207, 233 (S.D.N.Y. 2023) ("[T]he law is clear that the doctrines of unclean hands and laches are inapplicable for statutory claims.").

Here, for each claim, the Trustee seeks only compensatory money damages, which are "the

classic form of *legal* relief." *See Pereira v. Farace*, 413 F.3d 330, 339 (2d Cir. 2005). Because

the Trustee seeks "the funds attributable to [Tops'] loss, not the [Defendants'] unjust gain," *id.*at

340, laches and unclean hands are not viable affirmative defenses and must be dismissed, *Legal*

*Recovery Assocs. LLC v. Brenes L. Grp., P.C.*, No. 22CV1778ERBCM, 2024 WL 1073119, at *5

(S.D.N.Y. Feb. 13, 2024), *report and recommendation adopted*, No. 22CV1778ERBCM, 2024

WL 1118598 (S.D.N.Y. Mar. 13, 2024); *Rapf v. Suffolk Cnty. of New York*, 755 F.2d 282, 293 (2d

Cir. 1985) ("[T]he doctrine of laches . . . bar[s] only appellants' claims for equitable relief, not

their claims for monetary damages.").

### ii. *There is Either No Evidence to Support the Miscellaneous Asserted Defenses or They Are Inapplicable as a Matter of Law*

The Miscellaneous Asserted Defenses are unsupported by the evidence and should be

dismissed or stricken. *See F.D.I.C. v. Giammettei*, 34 F.3d 51, 55 (2d Cir. 1994); *Kew v. Town of*

*Northfield, VT*, No. 5:19-CV-78, 2020 WL 13857283, at *3 (D. Vt. Oct. 21, 2020) ("[C]ourts in

the Second Circuit have explained that affirmative defenses that are mere 'conclusory assertions,

absent any supporting factual allegations are insufficient as a matter of law and fail to provide a

plaintiff with any notice as to how the defense applies to the plaintiff's claims.'") (quoting *Coach,*

*Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010)).[19]

_There is no evidence to support equitable estoppel._ HSBC and the Outside Directors raised

equitable estoppel as an affirmative defense. A party asserting equitable estoppel must "show, on

the part of the party being estopped: '(1) conduct which amounts to a false representation or

---

[19] In addition, Defendants' Miscellaneous Asserted Defenses fail to the extent that they seek to impute Tops' conduct to the Trustee. *In re Donald Sheldon & Co., Inc.*, 153 B.R. 661, 665–66 (Bankr. S.D.N.Y. 1993) ("None of the three matters for which Trustee seeks a recovery were within Trustee's power or control to prevent; each involved matters which had come to rest at the time he assumed control.") (emphasis added); *FDIC v. Abel*, No. 92 CIV. 9175 (JFK), 1996 WL 520906, at *2 (S.D.N.Y. Sept. 12, 1996) (dismissing defendants' affirmative defense seeking to reduce FDIC's recovery by the amount of defunct bank and bank employees' culpability, because "to impute such conduct to the FDIC is improper because the FDIC is suing on behalf of the Bank depositors and creditors in addition to its shareholders," not "acting on behalf of the Bank").

concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.'" *Gass v. Mamedova-Braz*, No. 15 CIV. 3799 (ER), 2017 WL 3588944, at *8 (S.D.N.Y. Aug. 18, 2017) (quoting *In re Vebeliunas*, 332 F.3d 85, 93–94 (2d Cir. 2003)). They must also show, on the part of the injured party: "(1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in [its] position." *Id.* There is no evidence in the record of misrepresentations or concealment (or any of the other elements) by the Trustee (and Defendants point to none in their contention interrogatory responses). As such, none of those elements can be satisfied here and the defense should be dismissed.

*There is no evidence to support laches.* Defendants each asserted that the doctrine of laches bars the Trustee's claims. Even if laches were an available defense (and it is not, *see* Section III.B.i. above), it fails here because there is no evidence to substantiate any of its elements. "The defense of laches requires a showing of undue delay by a party asserting its rights and prejudice to the opposing party as a result of such delay." *In re Cohen*, 422 B.R. 350, 382 (E.D.N.Y. 2010). "The burden is on the party claiming the defense of laches to demonstrate the following elements: (1) conduct by an offending party giving rise to the situation complained of; (2) delay by the complainant in asserting his or her claim for relief despite the opportunity to do so; (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief; and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant." *Id.* "[M]ere inaction or delay in bringing a proceeding, without a showing of prejudice, does not constitute laches." *Id.*; *In re Schultz*, 250 B.R. 22, 38–39 (Bankr. E.D.N.Y. 2000) (laches defense unavailable to Debtor where there was no evidence of prejudice); *Rapf*, 755 F.2d at 292.

Defendants do not (and cannot) substantiate any of these elements. First, a defendant cannot show unreasonable delay when a plaintiff filed its lawsuit within the applicable limitations period. *See Astra USA, Inc. v. Bildman*, 375 F. App'x 129, 133 (2d Cir. 2010) ("[I]t is well established that, as a general rule, '[l]aches is not a defense to an action filed within the applicable statute of limitations.'") (quoting *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005)); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 655 B.R. 149, 180 (Bankr. S.D.N.Y. 2023) ("Applying laches within the period specified by the statute of limitations 'would give judges a 'legislation-overriding' role that is beyond the Judiciary's power' and would 'clash with the purpose for which the defense developed in the equity courts.'") (quoting *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 335 (2017)). As the Trustee's claims were brought within the statute of limitations period (*see* Section II, above), laches cannot apply.

Second, even if the defense were available, it fails as a matter of law because there is no evidence of prejudice. "To establish prejudice, . . . [the respondent] must demonstrate that the delay caused [it] a disadvantage in asserting and establishing a claimed right or defense." *In re Saucier*, 353 B.R. 383, 386 (Bankr. D. Conn. 2006). There is zero evidence of any disadvantage to Defendants.

Given the absence of evidence to satisfy the elements of laches, the Trustee is entitled to summary judgment on this defense.

*There is no evidence to support waiver.* Defendants[20] also asserted that the Trustee engaged in some sort of waiver. But it is unclear exactly what the Trustee has purportedly waived, or how he did so. To prove waiver, defendants must show an "intentional relinquishment of a

---

[20] SOMF ¶ 48, Ex. 39 (On February 20, 2024, the MS Defendants served a supplemental discovery response to the Trustee's contention interrogatories. In response to the Trustee's Interrogatory No. 9 (seeking "all facts supporting or refuting your contention that the Trustee's claims are barred by the doctrine of waiver or laches"), the MS Defendants only cited evidence purportedly supporting the laches defense, thereby abandoning their waiver defense.)

known right with both knowledge of its existence and an intention to relinquish it." *In re Cohen*, 422 B.R. at 380. Defendants point to zero evidence that the Trustee intentionally relinquished anything, much less the claims in this case. Given the absence of evidence necessary to satisfy any element of waiver, the Trustee is entitled to summary judgment on it.

<u>There is no evidence to support the unclean hands defense.</u> Defendants asserted that the doctrine of unclean hands bars the Trustee's claims. To show unclean hands, Defendants must demonstrate that "(1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party and (3) the asserting party was injured as a result." *In re Cohen*, 422 B.R. at 381; *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 90 (E.D.N.Y. 2019). In addition to being inapplicable to the Trustee's legal claims (*see* Section III.B.i. *supra*), there is no evidence of wrongful conduct, reliance, or injury here.[21] Accordingly, summary judgment is warranted on this defense. *In re Cohen*, 422 B.R. at 381 ("Given the absence of any evidence of wrongful conduct by the Appellee, the defense of unclean hands is unavailable to the Appellants under these circumstances as a matter of law. Accordingly, the Bankruptcy Court properly granted summary judgment in Appellee's favor on this issue.").

<u>There is no evidence that the Trustee's sought damages are speculative.</u> The MS Defendants and Outside Directors asserted that the Trustee's claims fail because his alleged damages are "purely speculative, remote, and impossible to ascertain, quantify, or allocate." Dkt. Nos. 139-141. This defense also fails as a matter of law, as the Trustee's damages claims are identifiable and concrete, *down to the penny*. The Trustee seeks damages in the exact amount of the unlawful dividends—$376,919,570.14 in total, which are available to recover under the

---

[21] SOMF ¶ 46 (In their interrogatory responses, the MS Defendants stated that "Tops' Plan of Reorganization, among other documents and evidence" supported their defense of unclean hands. However, MS Defendants have not, and cannot, explain how the confirmed Plan of Reorganization demonstrates that the Trustee engaged in "immoral, unconscionable conduct.").

Trustee's claims, *see, e.g.,* 11 U.S.C. §§ 544(b), 550(a); NY DCL § 276; N.Y. Bus. & Corp. Law § 720. There is no factual dispute over these amounts. SOMF ¶¶ 5, 9, 15, 22. Because there is nothing speculative about these damages claims, this defense should be dismissed. *See Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 109 (2d Cir. 2004).

*The setoff/recoupment defense is inapplicable.* The MS Defendants and HSBC assert that set-off/recoupment applies to the Trustee's claims, and seek to offset any judgment against them by "indemnity rights under their filed proofs of claim." SOMF ¶ 46 (Ex. 34, Ex. 35 (Response to Interrogatory No. 11)). However, the MS Directors' and HSBC's proofs of claim make clear that these claims are "contingent" on the exercise of certain purported indemnification rights they held. *See, e.g.*, SOMF ¶ 44. As "New York law does not recognize a right of setoff for contingent claims[,]" (*In re Corp. Res. Servs. Inc.*, 564 B.R. 196, 204 (Bankr. S.D.N.Y. 2017)), this defense fails as a matter of law.

*There is no evidence to support the double recovery defense.* The MS Defendants and HSBC assert that the Trustee's claims are barred by the doctrine of double recovery because certain of Tops' creditors have obtained recoveries resulting from the federal government's bailout of pension funds, including UFCW. SOMF ¶ 46, Ex. 34, Ex. 35. Specifically, they argue that, because the UFCW Plan received approximately $764 million through the federal government's Special Financial Assistance (SFA) Program, "any recovery received by the Trustee in this litigation should properly account for UFCW's SFA recovery to avoid a windfall." Defs.' Opp. to Pl.'s Pre-Motion Ltr. (Dkt. 208) at 5. This fails as a matter of law.

The rule against double recovery bars a plaintiff from "recover[ing] twice for the same injury." *Simuro v. Shedd*, No. 2:13-CV-00030, 2017 WL 3720766, at *8 (D. Vt. June 19, 2017). First, the plaintiff is the Trustee, not the UFCW Plan. The Trustee has not recovered anything

from the federal government for injuries the MS Defendants and HSBC inflicted on Tops.  *See, e.g.*, *Zarcone v. Perry*, 78 A.D.2d 70, 79 (2d Dep't 1980) (theory of double recovery "presupposes a prior recovery").  Second, there is no "same injury."  The UFCW bailout addresses an entirely _different_ injury from the loss alleged in the Amended Complaint.

To the extent that Defendants contend that the size of the creditors' claims imposes an outer limitation on the Trustee's damages claims, and the SFA bailout reduces the overall amount the Trustee can recover from Defendants, they are mistaken.  *See Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 464 B.R. 606, 616 (Bankr. S.D.N.Y. 2012) ("Section 544(b) of the Bankruptcy Code . . . allow[s] a trustee to avoid a fraudulent transfer without regard to the size of the claim of the creditor whose rights and powers the trustee was asserting"); *NextWave Pers. Communs., Inc. v. FCC (In re NextWave Pers. Communs., Inc.)*, 235 B.R. 305, 309 (Bankr. S.D.N.Y. 1999) ("[I]t is well settled that once an obligation is deemed voidable the entire transfer is avoided to the extent necessary to benefit the estate, without regard to the size of the claims of the existing creditors whose rights and powers the debtor-in-possession is asserting").  Because the rule against double recovery cannot bar the Trustee's claims, this defense should be dismissed.

_The good faith defense is inapplicable._  HSBC asserts that the defense of good faith under NY DCL § 277, or 11 U.S.C. § 544 or 11 U.S.C. § 550(b) of the Bankruptcy Code, bars the Trustee's claims.  The good faith defense requires that the entity that distributed the dividend did so in exchange for value.  NY DCL § 277(a) ("A transfer or obligation is not voidable under paragraph one of subdivision (a) of section two hundred seventy-three of this article against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee."); 11 U.S.C. § 550(b) ("The trustee may not recover under section [1] (a)(2) of this section from [] a transferee that takes for value, including satisfaction or

securing of a present or antecedent debt, in good faith, and without knowledge of the voidability

of the transfer avoided").  It is an undisputed fact that Tops did not receive any consideration in

exchange for its distribution of the dividends to HSBC or any other shareholder.  SOMF ¶¶ 6, 10,

16, 23.  HSBC's good faith defense fails as a matter of law.

    *The in pari delicto defense is inapplicable.*[22]  HSBC asserts that *in pari delicto* bars the

Trustee's claims.  But "*in pari delicto* is not a defense to a fraudulent conveyance suit."  *In re

Verestar, Inc.*, 343 B.R. 444, 480 n.19 (Bankr. S.D.N.Y. 2006) (citing *In re The Mediators, Inc.*,

105 F.3d 822, 825 (2d Cir. 1997)); *Cobalt Multifamily Inv'rs I, LLC v. Arden*, 46 F. Supp. 3d 357,

361 (S.D.N.Y. 2014) ("[U]nder New York law, neither the principle of *in pari delicto* nor the

*Wagoner* rule bars the Receiver from seeking to set aside the alleged fraudulent transfers."); *Novak

v. Salinas (In re Salinas)*, Nos. 21-20541 (JJT), 21-02011 (JJT), 2023 Bankr. LEXIS 685, at *12

(Bankr. D. Conn. Mar. 16, 2023) ("[I]n this Circuit a trustee *can* bring suit against third parties

and avoid the defense of *in pari delicto* for causes of action specifically granted to the trustee by

federal statute, such as a fraudulent transfer action under 11 U.S.C. § 548.") (emphasis in original).

As the Trustee is only asserting fraudulent conveyance claims against HSBC, the *in pari delicto*

defense is not available and should be dismissed.

    *The res judicata defense is inapplicable.*  HSBC asserts that res judicata bars the Trustee's

claims.  To prove res judicata, the party asserting the defense must show that "(1) [a] previous

action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or

those in privity with them; (3) the claims asserted in the subsequent action were, or could have

been, raised in the prior action."  *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285

(2d Cir. 2000).  Because the Trustee's claims have not been previously adjudicated, this defense

---

[22] The MS Defendants previously asserted this defense but subsequently withdrew it.  SOMF ¶ 46, Ex. 34 (MS Response to Interrogatory No. 15).

fails as a matter of law.

_The Section 502(h) defense is inapplicable._    HSBC asserts that Section 502(h) of the Bankruptcy Code forecloses the Trustee's claims.  Section 502(h)[23] of the Bankruptcy Code gives a pre-petition claim to a fraudulent transferee where the trustee recovers the transfer under Section 550.  _Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)_, Nos. 08-15051 (SMB), 10-5456 (SMB), 2012 Bankr. LEXIS 4799, at *9 (Bankr. S.D.N.Y. Oct. 12, 2012).  "[T]he rule of restoration only applies, however, where the transferee gave consideration for the avoided transfer."  _Id._  Because HSBC did not provide any consideration for the dividends it received, the rule is inapplicable, and the defense should be dismissed.

_The defense of non-debtor property is inapplicable._    HSBC asserts that the doctrine of non-debtor property bars the Trustee's claims.  "[I]n an ordinary bankruptcy, a trustee cannot avoid and recover a transfer of non-debtor property."  _Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC_, 531 B.R. 439, 448 (Bankr. S.D.N.Y. 2015).  Here, the dividends were issued by Tops and were unequivocally property of the debtor prior to their distribution to HSBC.  SOMF ¶¶ 5, 9, 15, 22.  This defense fails.

_The defense of failure to mitigate is inapplicable._    HSBC raises the duty to mitigate as a defense.  The duty to mitigate requires harmed plaintiffs to take reasonable steps to mitigate damages resulting from defendants' conduct.  _In re CBI Holding Co., Inc._, 419 B.R. 553, 572 n.22 (S.D.N.Y. 2009), _on reh'g in part_, No. 01 CV 0131 (KMW), 2010 WL 2287013 (S.D.N.Y. June 7, 2010); _Coach, Inc. v. Kmart Corps._, 756 F. Supp. 2d 421, 430 (S.D.N.Y. 2010).  However, this defense cannot be invoked against the claims of a trustee seeking adjudication of wrongdoing that

---

[23] Section 502(h) states: "A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."

occurred prior to their appointment. *See In re Donald Sheldon & Co., Inc.*, 153 B.R. 661, 665 (Bankr. S.D.N.Y. 1993) (granting trustee's motion in limine to exclude defendants' mitigation defense because "[n]one of the three matters for which Trustee seeks a recovery were within Trustee's power or control to prevent; each involved matters which had come to rest at the time he assumed control."). Where, as here, "there is no question of fact or law that might allow Defendants' failure to mitigate damages defense to succeed, [] the defense is therefore insufficient as a matter of law." *Coach, Inc.*, 756 F. Supp. 2d at 431 (S.D.N.Y. 2010).

*The defense of ratification is inapplicable.* HSBC asserts that ratification bars the Trustee's claims. "Ratification is the act of knowingly giving sanction or affirmance to an act which would otherwise be unauthorized and not binding." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 468 (S.D.N.Y. 2018). It requires both "knowledge of a defect in the act to be confirmed and the right to reject or ratify it." *Id.* Ratification cannot apply to this dispute. The Trustee, as a post-petition appointee, had no "'legal ability' to direct [Defendants] to act, nor any other 'right to reject or ratify' [their] conduct." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394 (AJN) (BCM), 2016 WL 4613390, at *16 (S.D.N.Y. Aug. 31, 2016) (rejecting ratification defense). Regardless, the Trustee "objected within a reasonable time by bringing suit within the applicable statute of limitations." *Id.* This defense also fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment dismissing Defendants' Section 546(e), Statute of Limitations, and Miscellaneous Asserted Defenses.

Dated: December 20, 2024

**MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.**

By: */s/ Kyle A. Lonergan* _____
Kyle A. Lonergan
James H. Smith
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
Email: klonergan@mckoolsmith.com
jsmith@mckoolsmith.com

Joshua Newcomer
600 Travis St, Suite 7000
Houston, TX 77401
Telephone: (713) 485-7300
Email: jnewcomer@mckoolsmith.com

## Appendix 1. Miscellaneous Asserted Defenses

| Defense | Asserting Party |
| --- | --- |
| Unclean hands | All Defendants |
| Laches | All Defendants |
| Equitable estoppel | HSBC, Outside Directors |
| Waiver | All Defendants |
| Speculative damages | MS Defendants, Outside Directors |
| Good faith under NY DCL § 277, or 11 U.S.C. § 544 or 11 U.S.C. § 550(b) of the Bankruptcy Code | HSBC |
| *In pari delicto* | HSBC, Outside Directors |
| Setoff/Recoupment | MS Defendants, Outside Directors |
| Double Recovery | MS Defendants, HSBC |
| Res judicata | HSBC |
| Section 502(h) of the Bankruptcy Code | HSBC |
| Non-debtor property | HSBC |
| Failure to mitigate | HSBC |
| Ratification | HSBC |

**Appendix 2. Dividend Distributions**

| Date | By | To | Amount |
|------|-----|-----|--------|
| 2009 | Tops Holding Corporation | MS Cap V | $78,435,000.00 |
|      |                          | HSBC I | $16,695,000.00 |
|      |                          | HSBC II | $4,200,000.00 |
|      |                          | Turbic | $5,250,000.00 |
|      |                          | Curci | $420,000.00 |
| 2010 | Tops Holding Corporation | MS Cap V | $21,482,359.00 |
|      |                          | HSBC I | $16,695,000.00 |
|      |                          | HSBC II | $1,199,970.00 |
|      |                          | Begain | $927,709.00 |
|      |                          | Turbic | $1,500,042.40 |
|      |                          | Curci | $119,978.00 |
| 2012 | Tops Holding Corporation | MS Cap V | $71,607,836.18 |
|      |                          | HSBC I | $15,899,734.76 |
|      |                          | HSBC II | $3,999,972.37 |
|      |                          | Begain | $3,092,363.38 |
|      |                          | Turbic | $5,000,138.14 |
|      |                          | Curci | $399,928.16 |
| 2013 | Tops Holding II | MS Cap V | $101,625,517.17 |
|      |                 | HSBC I | $22,564,835.13 |
|      |                 | HSBC II | $5,676,743.57 |
|      |                 | Begain | $4,388,669.00 |
|      |                 | Turbic | $7,096,174.53 |
|      |                 | Curci | $567,576.33 |
| **Total** | | | $376,919,570.14 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2024, the foregoing document was served on all

counsel of record via the Court's ECF system.


*/s/ Kyle A. Lonergan*
Kyle A. Lonergan